## Ockerman v. Commonwealth.

(Decided September 28, 1917.)

### Appeal from Nicholas Circuit Court.

1. Criminal Law—Evidence.—Where there is any evidence, however slight, tending to show the guilt of the accused, the case should go to the jury.

2. Criminal Law—Evidence.—A judgment of conviction will not be reversed on the ground that the verdict is against the evidence, unless the verdict is palpably against the evidence.

CONLEY & McCARTNEY for appellant.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellant, Herman Ockerman, was jointly indicted with Ed Bradley for robbery. They were given separate trials and each was found guilty. Ockerman appeals and asks a reversal upon two grounds. He insists, (1) that his motion for a peremptory instruction directing the jury to find him not guilty, should have been sustained; and (2) that the verdict is not sustained by the evidence.

The prosecuting witness, Taylor Arnold, testified that while he was riding in his buggy on the public highway,

near Moorefield, between 10 and 11 o'clock on Sunday night, October 17, 1915, he fell asleep; that for some cause unknown to him his horse stopped and he then heard persons engaged in conversation which aroused him from his sleep; that he saw a man on each side of the buggy, standing between the wheels thereof; that one of these men held a pistol in Arnold's face and asked him what he was doing there, and Arnold replied that he was going home; that the man then asked him if he had any whiskey, whereupon Arnold replied that he had none; that they then asked him if he had any money, to which Arnold answered that if he had any they could not get it; thatArnold then reached for his pistol, which was lying in the body of the buggy, and got hold of the barrel of the pistol, while one of the men grabbed hold of the butt and wrenched the pistol from Arnold's hand, and threw him back in the buggy, while the other man went through his pockets and took his watch therefrom; that they then went behind the buggy and fired the pistol several times and then stepped back to the buggy and presented another pistol against Arnold's face. Arnold further testified that he subsequently recovered possession of his pistol, without any explanation, however, as to how he did so; but that he had never recovered his watch. Arnold did not recognize the men, and it does not appear that he was acquainted with them at any time before the robbery. Ockerman and Bradley both testified that they were present on the occasion mentioned by Arnold, but deny that they robbed him. They attempted to explain their presence and participation in the affair by saying that Bradley and Fisher, who were colored men, had seen Wm. Miller, another colored man, going to church with a girl; and that they concluded to "speed" him upon his return from church. About that time Andrew Fuller and Ockerman passed along the road in Fuller's buggy, and the colored boys having told Fuller and Ockerman of their intention to "speed" Miller, the four drove up the road to a convenient spot where the colored boys got out of the buggy, leaving Ockerman and Fuller seated in the buggy waiting to see the fun; that while they were thus waiting, Arnold came along the road asleep in his buggy, and that the wheel of his buggy became locked with the wheel of Fuller's buggy; that Fisher and Bradley then lifted Arnold's buggy into the main road and that this aroused Arnold from his sleep; and, that this was the occasion of the

alleged robbery. They had an abundant supply of whiskey, and all four were drinking freely.

Their story of what subsequently happened is somewhat hazy and confused. Some of the witnesses say that Arnold proceeded up the road a short distance when his horse again stopped, and that when Ockerman and Bradley went to Arnold to see what was the matter, they asked him for whiskey; that Arnold pulled his pistol upon them; that they in self-defense grabbed his pistol and took it away from him and threw it into an empty house. Bradley testified that Ockerman took the pistol from Arnold, while Ockerman testified that Bradley took it.

Andrew Fuller, the man who owned the buggy in which the four men had traveled along the road, corroborated Ockerman, in a large measure, as to what happened before the altercation at the buggy. Bradley testified that he and Fisher were in a cabin in the Durham yard nearby when Arnold's buggy stopped, and that when Bradley left the cabin, Ockerman, who was coming into the yard, said, "Let's go out and see what this fellow has"; and that Ockerman took Arnold's pistol and threw it into an old cabin. Ockerman, on the other hand, admitted that he was on the road at Durham's place on the night of the robbery, and was sitting in Fuller's buggy at the time Arnold's buggy collided with it. He further testified that Bradley and Fisher, the two negro boys, were near the buggies, and that Arnold attempted to draw his pistol, whereupon Bradley grabbed it and fired it four or five times, to get the shots out of it. In short, according to Ockerman's story, the incident which Arnold calls the robbery, occurred when Arnold was aroused by the collision of the buggies; that in his excitement Arnold tried to draw his pistol, and was prevented from using it by Bradley's prompt action in taking it from him.

Myers, the arresting officer, stated that when they were conducting Ockerman to jail he said: "They have got me in a pretty durned close place, haven't they? What will I do to lay it on the nigger?" Ockerman denies having made that statement; and, there was some evidence tending to show that Arnold had made a statement to the effect that he did not lose the watch at the time he says he was robbed. Arnold, however, denied having made any statement of that kind. Under this proof, conflicting as it was in some material respects, it cannot be said there was no evidence tending to show the

guilt of appellant. The rule is that where there is any evidence, however slight, tending to show the guilt of the accused, the case should go to the jury. Gordon v. Commonwealth, 136 Ky. 508; Commonwealth v. Boaz, 140 Ky. 715. Furthermore, this court will not reverse a judgment on the ground that the verdict is against the evidence, unless it is palpably so. Davis v. Commonwealth, 154 Ky. 774; Jones v. Commonwealth, 158 Ky. 533; Knipp v. Commonwealth, 159 Ky. 775. If Ockerman's story was true he committed no offense; but if Arnold's account is true, Ockerman committed robbery. It was for the jury to say whether Arnold or Ockerman told the truth.

There was ample testimony to take the case to the jury; and under the rule that the credibility of the witnesses and the weight that is to be given to their testimony are matters addressed to the judgment of the jury, we cannot say that the verdict is palpably against the evidence.

Judgment affirmed.