## Peay v. Commonwealth.

(Decided September 24, 1918.)

### Appeal from Christian Circuit Court.

1. Criminal Law—Questions of Fact, Verdict and Findings—The verdict of a properly instructed jury in a criminal case should not be disturbed where there is any evidence to support it, unless it is so flagrantly against the evidence as to appear at first blush that the jury in making it were influenced by prejudice or passion.

2. Criminal Law—Instructions.—Where the evidence in a criminal case is such as to furnish no reasonable grounds to believe the defendant guilty of any criminal conduct or intention, it is the duty of the court to take the case away from the jury by directing a verdict of acquittal.

3. Criminal Law—Acts Accidentally Committed—Instructions.—For acts accidentally committed to be criminal, the perpetrator must have been so careless and negligent in their commission as to indicate a disregard for the safety of others, and unless they are so characterized the perpetrator is guilty of no crime, in which event the trial court should so direct the jury.

JOHN FELAND and C. R. CLARK for appellant.

CHARLES H. MORRIS, Attorney General, and HENRY F. TURNER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The grand jury of Christian county returned an indictment against the appellant, Jim Peay, a colored man, charging him with murdering his wife on December 25, 1916. Upon trial, under a plea of not guilty, the petit

jury returned a verdict convicting him of voluntary man-
slaughter and fixing his punishment at two years' con-
finement in the penitentiary.

Various objections to the verdict and judgment are
made in the motion for a new trial which the defendant
filed, but his counsel in this court rely chiefly and almost
exclusively upon the ground that the evidence was in-
sufficient to authorize a conviction, and that the verdict
is so flagrantly against the evidence as to show that it
was entirely the result of passion and prejudice on the
part of the jury. Since we have concluded, from a care-
ful reading of the record, that the first ground relied upon
here is well taken, it will be unnecessary to notice others
mentioned in the motion for a new trial.

The tragedy resulting in the death of defendant's
wife occurred late in the afternoon of December 25, 1916,
at the house of defendant's mother, in which he and his
wife were temporarily living. The deceased was the
mother of quite a young baby, and defendant and his
mother had returned from a Christmas dinner to which
they had been invited by a neighbor, the deceased being
unable to attend on account of the extreme youth of her
baby. Upon the return from the dinner the deceased was
sitting by a heating stove, the top of which was some-
thing like two feet from the floor. She had her baby in
her arms. Defendant took a seat on the opposite side of
the stove, and his mother one just in front of it. Directly
thereafter the defendant discovered a pistol on the man-
tel nearby which had been left there by some visiting
colored boy, and knowing that his mother strenuously
objected to a loaded pistol being on the premises, he
removed it for the purpose of extracting the shells which
it contained. While working with the pistol, according
to the undisputed proof, its barrel was pointed down-
ward, but the mechanism did not work smoothly, and in
an effort to get the shells from it one of them exploded,
the ball from which penetrated the breast of the wife,
who was sitting on the other side of the stove, inflicting
a wound from which she died, after lingering some five
or six weeks. Defendant immediately sought a telephone
and called a physician, after which he placed his
wife upon a bed, and did what he could to alleviate
her sufferings until the arrival of the physician. He re-
mained there with his wife and mother for a week or
more, when, according to the proof, with the consent of

his wife, he went away to procure work, there being nothing in the neighborhood he could do. He first went to the state of Illinois, but was unsuccessful, and then went to Indiana, where he obtained a position in the city of Evansville. Shortly after his departure his wife and child removed to the home of her mother, located nearby, where she remained until her death, the child continuing in the custody of its maternal grandmother. When the wife died the defendant's mother wrote him that "it would do no good to come home," and that his mother-in law had taken charge of the baby. Acting upon this, he did not return. Before the death of his wife the defendant sent some money to his mother but none to his wife.

The facts as just related are testified to by defendant and his mother, they being the only living eyewitnesses to the tragedy, and no one disputed them, directly or indirectly. Two or three neighbors heard the shot and went into the house, when they heard the wife say that her husband had shot her, but neither at that time nor at any other time did she accuse him of any guilty intent. On the contrary, according to the testimony of his mother, she excused him upon the ground that the shooting was accidental. No ill feeling is shown to have existed between the two. On the other hand their relations were perhaps as affectionate as is generally found between people of that race. No effort was made to prefer any charge against the defendant until the filing of the indictment, which was fifteen months or more after the accident, and when the defendant was arrested in Evansville by an officer of Christian county he readily consented to return to Hopkinsville without a requisition.

We are aware of the rule in this state that in criminal cases if there is any evidence tending to establish the guilt of the defendant the verdict of the jury convicting him should not be disturbed by the trial court upon a motion for a new trial, nor by this court upon appeal. But another equally well established rule is that if the verdict "is so flagrantly against the evidence as to appear at first blush that the jury in making it were influenced by prejudice or passion" it should be set aside. Martin v. Commonwealth, 178 Ky. 439; Ackerman v. Commonwealth, 176 Ky. 753; Gordon v. Commonwealth, 136 Ky. 508; Commonwealth v. Boaz, 140 Ky. 715, and

Davis v. Commonwealth, 154 Ky. 774. But we are not called upon in this case to apply the doctrine of the cases just referred to, since the first question to be determined is, whether there is any evidence tending to establish the defendant's guilt; for if there be none, the rule in this and all other jurisdictions requires that he should not be punished, and in such cases it is the duty of the court to direct a verdict of not guilty. The evidence contained in the record, according to our minds, fails to establish a single fact or circumstance tending to show any guilty intent on the part of the defendant, unless it be the fact that he failed to return home upon the death of his wife. But when we take into consideration the mannerisms and characteristics of the colored race, and the known lack of the higher and keener appreciation of attachments growing out of the domestic relations possessed by more enlightened people, we are not surprised that the advice of the defendant's mother not to return was heeded by him. Neither the manner of his departure nor his conduct while away is indicative of the fugitive.

In arriving at our conclusion we have not overlooked the fact that one may be guilty of an offense resulting from an accident if it was produced by such carelessness and recklessness on his part as to indicate a disregard for the safety of others. But in this case we find no such negligent or careless conduct on the part of the defendant. It certainly can not be insisted that the fact that the pistol was discharged and the deceased shot furnishes evidence of such carelessness and negligence, since in every accident there is present some element of carelessness or negligence, otherwise it would not happen. The carelessness or negligence necessary to convert the accident from an innocent into a guilty one must be under such circumstances as to indicate, as we have stated, a disregard on the part of the perpetrator for the safety of others. We find no such circumstances in this case, and we are constrained to the conclusion that the court should have directed the jury to acquit the defendant.

Judgment reversed.