## Williams v. Commonwealth.

(Decided January 15, 1919.)

### Appeal from McCracken Circuit Court.

1. Criminal Law—Taking Indictment and Former Verdict to Jury Room.—While it is improper to permit a jury to take to its room the indictment with a former verdict written thereon, yet the error is not such a material one as to authorize a reversal therefor. But if the court's attention is called to the fact he should prevent the verdict from going to the jury room, either by withholding the indictment from the jury or obliterating the verdict.

2. Criminal Law—Examination of Witnesses—Appeal and Error.—Although the court may be in error in refusing to permit a witness to answer a question, still the error, if any, can not be considered on appeal without an avowal stating what the witness would have answered.

3. Criminal Law—Review.—Since the enactment in 1910 of the amendment to section 281 of the Criminal Code, error of the court in its decision upon motion for a new trial in a criminal case may be reviewed by this court, and if the verdict is palpably and flagrantly against the evidence it will be reversed on that account, although the testimony furnished a scintilla of proof sufficient to submit the case to the jury.

CROSSLAND & CROSSLAND for appellant.

CHARLES H. MORRIS, Attorney General, and HENRY F. TURNER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant, Walter Williams, and one Henrietta Wilson were jointly indicted by the grand jury of McCracken county, accused of stealing $50.00, the property of the prosecuting witness, John O. Wilson, and upon his separate trial he was convicted, his punishment being fixed at confinement in the penitentiary for one year, and from the judgment rendered on that verdict he sought a new trial, which was denied him, hence this appeal. The other defendant, Henrietta Wilson, was first tried and acquitted, and it is claimed on this appeal that the verdict acquitting her was written upon the indictment and taken

by the jury which tried appellant to the jury room when considering its verdict in his case.

The only grounds presented by the motion for a new trial which we deem necessary to consider on this appeal are: (1) Alleged error in permitting the jury to take to its room the indictment with the verdict acquitting appellant's codefendant appearing thereon. (2) Error in refusing to permit a witness for defendant to answer a material question. (3) That the verdict is flagrantly and palpably against the evidence.

Considering these in the order named: (1) This court has never held that it was reversible error for the jury to take to its room the indictment upon which was written a former verdict, even when the verdict was upon the trial of the complaining defendant, much less if it was rendered upon the trial of a codefendant. Cargill v. Commonwealth, 93 Ky. 578; Herrold v. Commonwealth, 10 Ky. Law Rep. 70; Vinegar v. Commonwealth, 104 Ky. 106. In the Herrold case it was urged before this court, upon appeal from a judgment rendered on the second trial of defendant, that it was error for the jury to take to the jury room the indictment with the verdict of conviction at a former trial of defendant written thereon. But this court, in disposing of that objection, after quoting section 278 of the Criminal Code, said: "And if it is usual and proper for them (the jury) to take the indictment, we do not think the court erred in that respect, although there was written upon the indictment the verdict of the previous jury."

In the Vinegar case this court went no further than to say in substance that it was improper practice to permit the former verdict to be taken by the jury to the jury room, but it was not held therein that for the jury to do so would be a reversible error, and the same is true in the Cargill case. But, however this may be, in all of the cases it was held that whatever the character of error it be, the defendant could not take advantage of it upon appeal when there was no objection made at the trial, and where the question was raised for the first time in the motion for a new trial. In the Cargill case upon this point it is said: "But the appellant made no objection, and it was his business, as much as that of the other side, to see that the proper papers were taken to the jury, and if not being done, to call the court's attention to it.

By proper vigilance upon his part his right of objection would have been available to him."

The fact that the verdict acquitting appellant's co-defendant in this case was not known by appellant's attorney to be written on the indictment at the time the case was submitted to the jury can not affect the case, since it was the duty of the attorney to know that fact, which could have been discovered by a mere inspection of the indictment upon which his client was being tried. Aside from all this, the transcript filed in this court, which is certified by the clerk to contain the entire record, nowhere shows that any such verdict was endorsed anywhere on the indictment.

In concluding the discussion of this ground it might be said that it would be better practice not to permit former verdicts written upon the indictment to be taken by the jury to the jury room, and if the attention of the court should be called to the fact, it would be his duty to take such steps as might be necessary to prevent it, either by withholding the indictment from the jury, or requiring the former verdict to be obliterated in some manner.

The testimony sought to be elicited by the question which the court declined to permit the witness to answer under the (2) ground of complaint was an incriminating fact concerning the conduct of appellant's codefendant, Henrietta Wilson. We think the fact sought to be proven was material to appellant's defense, but there was no avowal made of what the witness would say if permitted to answer, and the error, although a material one, can not under the settled rule of practice in this court, be considered by us.

The (3) ground for a reversal presents a more serious question. The testimony as found in the record is in a very much confused condition, which largely arises from the fact that the witnesses both for the Commonwealth and defendant in testifying used the indefinite expression "this man," referring either to defendant, the prosecuting witness, or some other, but to whom the witnesses thus referred we are in several instances unable to determine. From the best we can gather from the record the prosecuting witness went to Paducah from Union City, Tennessee, arriving at the former place about nine o'clock a. m., having made the trip in an automobile. Defendant conducted a boarding house in which he pro-

vided lodging for both-sexes. When the prosecuting witness arrived at Paducah he went to defendant's house. and engaged a room. At that time he claims to have paid for his transportation from Union City to Paducah, and for a bed. He talked awhile with a woman by the name of Cook, and asked her if there was any one about there with whom he could pass the time away, whereupon he was directed to Henrietta Wilson, who appeared about that time, and she and the prosecuting witness, Wilson, engaged in conversation until about one-thirty in the afternoon, when they went automobile riding. They were gone on this trip until about five-thirty, when they returned to defendant's house. Soon after that they went to the room of Henrietta Wilson and remained there some fifteen or twenty minutes, when the latter went away. About nine o'clock the defendant waked up the witness and asked him if he had any money, and the witness answered in the affirmative, but after searching for it, according to Wilson's testimony, it was found to be missing, and defendant informed him that he suspected Henrietta Wilson had taken it. Afterward the prosecuting witness sent another person to defendant to talk with him concerning the loss of the money and the defendant sent word that in order to keep down slanderous reports calculated to give his boarding house a bad reputation he would pay $15.00 if the matter should be abandoned. But this was refused, and a proposition was made to defendant to settle the matter if he would pay $40.00, which he promptly declined.

Henrietta Wilson did not testify upon the trial of the defendant. Neither does it appear from the testimony of the prosecuting witness, Wilson, that he lost $50.00, or any other amount, in defendant's house. All he says upon that subject is: "Q. Did you lose any money in the city of Paducah? A. Lost $50.00 and some cents. Q. Here in Paducah? A. Yes." This is all the testimony as to how much, if any, money he had, or as to where or when he lost any money.

From what has been said it is manifest that the one who had the better opportunity to take the money was Henrietta Wilson. She was with the prosecuting witness for four hours or more wandering about over the city of Paducah in an automobile or elsewhere, and it is evident that they were at places where intoxicants could be ob-

tained, because upon their return the prosecuting witness was considerably intoxicated. Notwithstanding his condition, Henrietta Wilson went with him to the room and remained there for fifteen or twenty minutes. It is not shown that defendant knew that Wilson had any money, except that it is claimed that he was present when the automobile fare was paid and that he was paid for the night's lodging. It is not shown how much money was displayed at that time. The only suspicious circumstance we find in the record is the offer of defendant to pay the prosecuting witness $15.00. The explanation given of this offer is to our minds reasonable, since a public agitation would detrimentally affect the reputation of defendant's house and might result in a groundless prosecution of him. But whatever probative effect the offer might have had in this trial, we are convinced that it was necessarily small, and was at best but a suspicious fact which, standing alone, is insufficient to sustain the conviction. Lucas v. Commonwealth, 147 Ky. 744; Blankenship v. Commonwealth, *idem,* 768. Especially are we satisfied with this conclusion when the facts show that another (Henrietta Wilson) had greater opportunities and was much more liable to have committed the offense than defendant. Hall v. Commonwealth, 149 Ky. 42.

Since the amendment of 1910 to section 281 of the Criminal Code, this court may consider on appeal the error of the trial court in its ruling upon motion for a new trial. Prior to that time it could not do so, and if there was any evidence looking to the guilt of the defendant, however slight, this court was powerless to interfere and could under no circumstances reverse the judgment because the verdict was flagrantly against the evidence. Since the amendment, this court has not hesitated to reverse the judgment when the verdict was palpably against the evidence. Chaney v. Commonwealth, 149 Ky. 464; Commonwealth v. Boaz, 140 Ky. 715; Gordon v. Commonwealth, 136 Ky. 508; Ackerman v. Commonwealth, 176 Ky., 753; Martin v. Commonwealth, 178 Ky. 439; Davis v. Commonwealth, 154 Ky. 774, and Peay v. Commonwealth, 181 Ky. 396; Hall v. Commonwealth, *supra;* Same v. Same, 152 Ky. 812; Minniard v. Commonwealth, 158 Ky. 216, and Blankenship v. Commonwealth, *supra.*

Although the circumstance above alluded to creates but a suspicion, and standing alone is insufficient, as we conclude, to sustain a conviction, yet we can not say that it did not create a scintilla of evidence so as to require a submission of the case to the jury, and we do not think the court should have directed the jury to return a verdict of acquittal.

For the error indicated, the judgment is reversed, with directions to grant the appellant a new trial, and for proceedings consistent with this opinion.