## Day v. Commonwealth.

### (Decided February 16, 1923.)

## Appeal from Leslie Circuit Court.

1. Homicide—Instructions—Self-Defense.—Where there was evidence introduced on a trial for murder tending to show that the accused committed the homicide in defense of a member of his family, an instruction presenting that theory of the case should be given. But the rights of accused in that respect may be defined in an instruction separate from the one on self-defense, and the failure to combine the two instructions is not error.

2. Criminal Law—New Trial—Evidence.—Under subsection 5 of section 271 of the Criminal Code, it is the duty of the trial court to grant the defendant a new trial if the verdict of the jury be against the law or the evidence; and it is the duty of this court to review the trial court's ruling on that ground. Held in this case that the verdict of the jury was palpably against the evidence.

J. M. MUNCY, L. D. LEWIS, J. B. MINIARD and C. K. CALVERT for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

Appellant was convicted in the Leslie circuit court of killing Robert Whitehead and sentenced to confinement in the state penitentiary for ten years. He has appealed, contending that the court did not instruct the jury on the whole law of the case, and that the verdict of the jury is palpably against the evidence.

The first ground mentioned pertains to the instruction on self-defense, which ought to have included, it is said, a definition of the defendant's right to defend his family and home against the assaults of deceased and to

avert any danger to them, real or to him apparent, even to the extent of killing the deceased. Eversole v. Commonwealth, 95 Ky. 623, Watson v. Commonwealth, 132 Ky. 46, and Tucker v. Commonwealth, 145 Ky. 84, are relied on by counsel as supporting the contention. It is the rule, as announced in those cases and many others, that one has the right to defend his family against the assaults of another. But it has never been held, and was not held in any of the cases cited, that the failure to define the right in the instruction on self-defense is error, where as in this case it was embodied in a separate instruction. Perhaps it is better to incorporate the definition into the instruction on self-defense, as pointed out in Hoover v. Commonwealth, 192 Ky. 490, but the failure so to do in the case at bar was not error in view of the fact that that theory of the case was presented to the jury in a separate instruction.

The second contention goes to the sufficiency of the evidence. In July, 1922, Whitehead, Levi Boggs, Henry Lewis and Sylvania Turner, all of whom had been drinking, left the latter's place to go to Whitehead's house over a route that passed through defendant's yard. Lewis and Boggs were considerably under the influence of whiskey. In passing through the yard it was necessary to open two gates only a short distance apart. The way between the gates was a bridle path, but it had been used by the public for a great many years. There was a small porch in front of defendant's residence and a path leading from the porch to the path between the two gates. The evidence shows that when Whitehead came to the first gate he either lifted the latch or tore it off and went into the yard, followed by Boggs; that he turned his mule loose and proceeded in the direction of the other gate; but stepped off the path between the two gates into a path leading to defendant's porch and when within a very few feet of the porch, the distance ranging from two to twelve feet according to the evidence, he was shot by defendant. Whitehead then walked out of the yard and lay on a rock for two or three hours until he was removed to the home of his father, where he died the next day. Boggs and Lewis left almost immediately after the shooting, apparently unaware of the serious nature of Whitehead's injury.

Defendant was a deputy sheriff. He testified that he was sitting on his front porch with his wife and child; that Boggs and Whitehead appeared at his gate and the

latter, without attempting to unlatch it, threw himself against it and broke the latch; that he called defendant a vile name and turned his mule loose in the yard, whereupon the witness told him to pass through the yard in an orderly way; that Whitehead replied he would go through as he damned pleased and, with an open knife in his hand, proceeded toward the porch on which defendant was sitting; that as he came toward defendant the latter begged him to go on through and not have any trouble, but he continued to approach defendant with the knife in his hand, and when within two or three feet of the porch defendant fired twice; that he then turned and walked out through the open gate. This version of the shooting is largely corroborated by undisputed facts disclosed by the record. Several witnesses saw the open knife lying at the edge of the porch. It was shown that the deceased had threatened the life of defendant, and only two or three weeks before the shooting defendant had left a public meeting in the community and returned to his home to avoid trouble with the deceased. Boggs and the witness Sylvania Turner both said that they did not see deceased make any demonstration toward defendant nor hear him say anything. Their testimony, however, is almost wholly discredited. It was shown that Boggs was too drunk to know what transpired, and that fact is confirmed by the manner in which he testified on the trial. The weight of the evidence shows that the Turner woman was not present when the shooting occurred and did not see it. It was proved that both of these witnesses had made statements subsequent to the killing and prior to the trial that tended to exonerate defendant. Both of them denied seeing deceased with a knife, yet his knife was found at the edge of the porch, and in a dying statement he admitted that he had an open knife in his hand. It is not claimed that he was on the bridle way between the gates at the time of the shooting. On the other hand it is conclusively shown that he was approaching the porch and within a few feet of it; also that in coming into the yard he turned his mule loose and proceeded toward the porch. Appellant was sitting quietly on his porch with his wife and child. He had a pistol in his possession to be sure, but he was a deputy sheriff and had just returned from a cemetery, where he had assisted in the digging of a grave, having in his possession when he went to the cemetery some warrants to be executed. Whitehead's turning his mule loose

upon entering the yard, his leaving the path between the gates and approaching the porch, the finding of his open knife at the porch, with other facts and circumstances appearing in the record, abundantly show a purpose on his part to carry out the threats that he had made and to do defendant great bodily harm or to kill him.

Prior to the Act of March 23, 1910, amendatory of section 281 of the Criminal Code, this court was without authority to review the rulings of the trial court on a motion for a new trial. But since the effective date of that amendment we have consistently held that if the verdict of the jury is palpably against the evidence a reversal for refusing to grant a new trial will be ordered. May v. Commonwealth, 164 Ky. 109; Allen v. Commonwealth, 176 Ky. 475; Ockerman v. Commonwealth, 176 Ky. 753; Martin v. Commonwealth, 178 Ky. 439; Peay v. Commonwealth, 181 Ky. 396; Miller v. Commonwealth, 182 Ky. 438; Williams v. Commonwealth, 182 Ky. 711; Cloninger v. Commonwealth, 191 Ky. 841; Kirk v. Commonwealth, 192 Ky. 460; Wells and Isaacs v. Commonwealth, 195 Ky. 740; Allison v. Commonwealth, 196 Ky. 140.

Under subsection 5 of section 271 of the Criminal Code it is the duty of the trial court to grant the defendant a new trial if the verdict of the jury be against the law or evidence, and it is the duty of this court to review the trial court's ruling on that ground. The rule that requires a submission of a case to a jury where there is any evidence, however slight, tending to show the guilt of the accused must not be confused with the rule that requires the court to set aside a verdict of conviction if it be palpably against the evidence. Each has its distinct place and there may be a proper application of each in the same case. One is as binding on the court as the other. Appellant has invoked on this appeal his right to protection against a verdict that he claims is palpably against the evidence. Looking to the evidence, and regarding the testimony of Boggs and Turner as of little probative value, as we are bound to do on a careful analysis of it, it is our conclusion that the contention must be sustained. We are reluctant to set aside the verdict of a jury on the ground that it is palpably against the evidence, but after a careful consideration of all the evidence in this case it is our deliberate conclusion that the lower court should have granted a new trial on that ground. The judgment is accordingly reversed.