## Little v. Commonwealth.

(Decided October 9, 1925.)

### Appeal from Floyd Circuit Court.

1. Homicide—Conviction of Manslaughter Held Flagrantly Against Evidence on Either of Two Theories.—Conviction of manslaughter held flagrantly against evidence, whether based on finding that defendant fired shot or that gangrenous condition, developing near point where ball lodged, was brought about by head wounds inflicted by defendant with rocks and other missles.

2. Criminal Law—Jury Cannot Return Verdict Unsupported by Evidence on Mere Suspicion or Conjecture.—While jury are triers of facts and may determine weight of evidence, accept or reject all or part of it, and believe one witness or set of witnesses in preference to another, they cannot, on mere suspicion or conjecture, return verdict unsupported by evidence and plainly subversive of truth.

3. Homicide—Proof of Self-Defense Beyond Reasonable Doubt Unnecessary.—Jury need not believe evidence of self-defense beyond reasonable doubt in order to acquit.

EDWARD L. ALLEN, A. J. MAY and JOHN CAUDILL for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

Appellant, charged with the murder of King Johnson, was on his trial found guilty of manslaughter, and appeals.

The only question necessary to consider is whether the verdict is flagrantly against the evidence, and the determination of that question involves a statement of the facts.

In December, 1924, appellant and his father-in-law, Hiram Johnson, together with Bryan Johnson, King Johnson and Russell Lee started rabbit hunting from the home of Hiram, where appellant lived. They had shot guns and dogs, and when the dogs started a rabbit appellant and King Johnson left the other three and went around a hill with the purpose of intercepting the rabbit before it could get to a certain hole, and the two were soon out of sight of the other members of the party.

After the departure of the two, Sol Johnson, a brother of King, and another, joined the party which appellant and King Johnson had left.

Appellant and King each had shot guns, and after they were out of sight of the others two or three shots were heard in their direction, and a little later those left behind heard them quarreling, and heard sounds indicating they were in a difficulty, although they could not see them. It was suggested twice by Hiram, the father-in-law of appellant, to Sol, the brother of King, that he go to them and separate them. This he started to do, and when he came in sight of them they were fighting, King being down and appellant striking him with rocks and sticks, according to the testimony of Sol. The fighting ceased and the two came towards Sol, appellant in front with both of the shot guns, and King a short distance behind throwing rocks at him. As they approached Sol he presented his 32 caliber pistol at appellant, and told him to consider himself under arrest, at the same time asking if he had shot his brother, to which appellant replied he had not, but had struck him with his fist. Hiram, the father-in-law of appellant, had followed Sol, some distance behind him. While Sol had the pistol leveled on appellant and required him to throw down the two shot guns, King continued to throw rocks at appellant. At the time appellant was on one side of a wire fence and Sol and King were on the other side and near to each other, and only about 12 or 15 feet from appellant. While the parties were thus situated in a rather triangular or "V" shaped situation with reference to each other, King, being only a few feet from Sol, hurled another rock at appellant, which rock struck either the hand with which Sol was holding the pistol or the pistol itself, and knocked it out of his hand, and either before it left his hand or immediately thereafter, the pistol was discharged and the bullet struck King in the right side just above the hip bone and ranged downward.

The only material difference in the evidence is that Sol says when the rock struck his hand or the pistol he did not then have the pistol presented at appellant, but had turned and had the same leveled upon Hiram Johnson; and while he admits the rock struck the pistol or his hand and was caused to leave it, and that a second thereafter it went off, he claims it was knocked over or through the fence on the side where appellant was and near to him. He admits that he did not see anybody fire

the shot, and says at the time he had his back to appellant and King. The preponderance of the testimony is, however, that he still had the pistol presented at appellant when the rock struck it, such evidence being given by appellant, Hiram Johnson and others of the party who were near enough to see.

King Johnson lived eleven days, and a post mortem examination disclosed a 32 caliber ball in his right side lodged in or near the pelvis, and in that locality gangrene had developed which was probably the cause of his death.

None of the party had a pistol of any description except the 32 caliber one in possession of Sol, and no witness says that appellant fired that pistol, or had possession of the same on that day until after King Johnson was shot, or that he on that day even fired his shot gun. Even Sol Johnson, strongest witness for the Commonwealth, says he does not know who fired the shot, because his back was to appellant when the pistol was discharged, and at the same time admits that it was discharged a second after the rock struck his hand, and furthermore that his brother King immediately thereafter said, "Buddy, you shot me," evidently meaning thereby to charge that Hiram Johnson, the father-in-law of appellant, who was called "Buddy," had fired the shot that struck him. The whole evidence shows that immediately before the pistol was discharged the decedent had thrown a rock at appellant, which struck Sol's hand or the pistol, and necessarily the decedent was at the time looking at or towards appellant, and yet immediately upon discharge of the pistol charged another with having shot him. This is most convincing that he knew the man at whom he was looking and at whom he was throwing had not fired the shot.

Not only so, every other witness in sight of the parties at the time states that the rock struck the hand or pistol, and that the latter was thereafter immediately discharged. The inference attempted to be drawn from the evidence of Sol Johnson that the pistol was knocked out of his hand and fell very close to appellant, and that he might have picked it up and fired and killed decedent is wholly at variance not only with the evidence of all the other witnesses, but with the testimony of Sol Johnson himself. It is likewise wholly inconsistent with the statement of the decedent immediately after the discharge of the pistol, and is out of harmony with the physical facts and the situation of the parties.

In addition to all that, while Sol Johnson undertakes in his testimony to leave the impression, without saying so, that appellant might have picked up the pistol and fired the shot, five or six unimpeached witnesses, including the doctors, for whom Sol Johnson went immediately in search after the injury to his brother, state that he (Sol) on that day had told each of them that the rock struck the pistol and caused it to go off and shoot his brother.

It is apparent, therefore, that if the verdict is based upon the finding that appellant fired the shot it is flagrantly against the evidence.

But as the indictment charges appellant with murder, not only by shooting decedent with a pistol but by striking and wounding him with rocks and other missiles, it is argued that the wounds on the decedent's head which the evidence tends to show were inflicted by appellant were the cause of his death, and that the evidence justifies such a finding. The two doctors who testified, while saying it was possible for the wounds on the head to have produced the gangrene in his abdomen which resulted in his death, that their opinion was it was produced by the gun shot wound; and that view appears to be fortified by the additional fact that the wounds and bruises on the head had practically cured up before the boy's death, eleven days after he was shot, and by the further fact that the gangrenous condition developed at a point not far from where the ball lodged. If, therefore, the verdict is based upon a finding that such condition was brought about by the wounds on the head it is unsupported by the evidence, and is likewise flagrantly against it.

While the jury are the triers of the facts, and may determine the weight to be given to the evidence of the witnesses, and while they may accept or reject, in whole or in part, the evidence of witnesses, and may believe one witness or set of witnesses, in preference to another, they are not authorized, upon mere suspicion or conjecture, to return a verdict which is unsupported by the evidence and which is plainly subversive of the truth. Wilson v. Commonwealth, 208 Ky. 715.

Upon another trial the court will modify the self-defense instruction (No. 4) so as not to require the jury to believe "beyond a reasonable doubt" the evidence upon which the defendant's plea of self-defense rests.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.