## Forgy v. Commonwealth.

(Decided March 25, 1927.)

## Appeal from Butler Circuit Court.

1. Homicide.—Conviction of malicious wounding and striking with a deadly weapon with intent to kill held flagrantly against evidence on issue as to whether wounds were inflicted with deadly weapon or defendant's fists.

2. Criminal Law.—Where defendant, indicted for murder, was convicted only of misdemeanor of malicious striking and wounding with deadly weapon with intent to kill, commonwealth's attorney will not be permitted on new trial to interrogate him as to prior murder and conviction thereof under Civil Code of Practice, section 597.

W. S. HOLMES, S. H. BROWN and E. J. FELTS for appellant.

FRANK E. DAUGHERTY, Attorney General, and J. P. CUSICK for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY— Reversing.

This is an appeal from a judgment convicting appellant of malicious striking and wounding with a deadly weapon with intent to kill, and fixing his punishment at one year's imprisonment in the penitentiary.

The facts are these: The difficulty occurred at Quality, in Butler county, on August 21, 1925. The prosecuting witness, T. V. McReynolds, owned a store, and he and Luther Porter went to the store for the purpose of calling an officer to arrest Leo Forgy, who had created a disturbance at the church. After leaving the store they separated and Porter went toward Jim Rosser's store and McReynolds started toward the church. On reaching Tol Forgy's blacksmith's shop McReynolds saw appellant and Floyd Forgy sitting near the shop. According to McReynolds they both followed him and Claud Forgy said, "Tom, I thought you were our friend." Someone struck him about the head from behind. He became unconscious and did not know how many times he was struck. He was struck in the back and on the side of his head, on his face over his right eye, and there were bruises on his face. There was a cut over his right eye. He did not know whether he was struck with a weapon or not, but thought the defendant struck him with his fists or knucks. There were no scars on his face that he

knew of. He admitted that he had a searchlight in his pocket, and when asked if he did not state to Dr. Harper that appellant struck him with his fists only, he replied that he did not remember if he did. He exhibited his face to the jury to be examined for scars. Porter testified that after he and McReynolds separated he heard a racket and ran back. McReynolds was down and Claud Forgy was standing astride him and striking with both hands. McReynolds' face was bruised and there was a cut place over his eye and his jaw. McReynolds recovered his speech in from a quarter of a minute to a minute after the fight stopped.

D. L. Porter testified that he heard someone say, "Where is Tom McReynolds, I want to blow his light out." Dr. Harper stated in his presence that the wounds appearing on McReynolds could not have been inflicted with a man's fist. Arthur Corum stated that he thought McReynolds was struck with something, that it did not look like it could have been done with a fist; that McReynolds said to him that Forgy struck him with his fist; that the gash over McReynolds' eye was about two and one-half inches long. Guy Porter testified that the gash over McReynolds' eye was about an inch long. L. E. Caldwell saw McReynolds some days after the fight and his face was bruised and black. A number of witnesses testified that Dr. Harper stated that he did not think the wounds could have been inflicted with a man's fist. On the other hand, appellant testified as follows: He and Floyd Forgy left the church and were standing near Tol Forgy's blacksmith's shop at the edge of the public road. He knew nothing of the whereabouts of Tom McReynolds until he left his store and started back towards the church. McReynolds walked up in front of him and threw a flashlight in his face. He knocked the flashlight out of McReynolds' hand. McReynolds then struck him and he fought McReynolds with his fists, striking him several times and knocking him down. He called to Luther Porter to come and see what he struck McReynolds with so no one could tell any lies about him. He used no weapon of any kind and struck McReynolds with his fists only. He further testified that he did kill a German spy in Louisville during the war and was tried and sentenced to jail for one year upon said charge. Claud Forgy corroborated appellant, and stated that appellant struck McReynolds with his fists, that appellant had no weapon of any kind and did not strike McReynolds

with one.  Arvin Ewing testified that he heard T. V. McReynolds tell Dr. Harper that appellant struck him with his fist.  He also testified that Dr. Harper did not say "it did not look like no fist to him." .

We are not prepared to say that on a prosecution like this there must always be direct evidence as to the character of the weapon employed.  Doubtless a case may arise where the wounds are such as to justify the inference by the jury, especially when supported by the opinion of a physician, and there are no eye-witnesses, that they were inflicted with a deadly weapon, as where the skull was crushed, or a bone was broken, or there was a deep cut or wound that could have been caused only by an instrument calculated to produce death under the circumstances of its use.  It is true that in this case several witnesses testified that Dr. Harper stated in their presence that the wounds could not have been caused by a man's fist.  Though pure hearsay this evidence appears to have been admitted without objection.  However, even if Dr. Harper himself had testified on the trial that the wounds could not have been caused by a man's fist, this evidence would have fallen far short of showing that they were caused by a deadly weapon.  Then, too, it must not be overlooked that a man's fist may cause severe bruises on another's face, and even a cut or gash when the blow is struck immediately above the other's eye.  Here no bones were broken and there were no scars indicating that the wounds were serious.  Appellant says that he used no weapon of any kind, and, though there were several eye-witnesses to the difficulty, none of them pretend to have seen any weapon of any kind in his hand, or near the scene of the trouble.  On the contrary, they say that appellant used only his fists.  In view of this situation it is clear that the slight circumstances relied on by the commonwealth to show that appellant used a deadly weapon were of but little probative value, and were so outweighed by the positive evidence of all who were present that we are constrained to hold that the verdict of the jury was flagrantly against the evidence.

As appellant, though indicted for murder, was convicted only of a misdemeanor, the court on another trial will not permit the commonwealth's attorney to interrogate him as to the prior offense and his conviction thereof.  Civil Code, section 597; Welch v. Commonwealth, 110 Ky. 105, 60 S. W. 185, 948, 1118; Warrix v. Commonwealth,

195 Ky. 795, 243 S. W. 1025; Bentley v. Commonwealth, 200 Ky. 246, 254 S. W. 752.

No other questions are passed on.

Judgment reversed and cause remanded for a new trial consistent with this opinion.