## Fuson v. Commonwealth.

(Decided October 4, 1929.)

762

JAMES S. GOLDEN, B. B. GOLDEN, J. G. ROLLINS and J. H. TAYLOR for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, Jr., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

J. R. Fuson, a man 50 years of age, was tried under an indictment charging him with the murder of Howard Rice, a man 28 years of age. Fuson admitted the homicide, but sought to justify his act as one done in his necessary self-defense. The jury found him guilty of manslaughter and fixed his punishment at five years in the penitentiary. To reverse the judgment that followed, Fuson's principal reliance is that the verdict is flagrantly against the evidence; hence we shall endeavor to state the substance of it.

For about two years these men had been enemies, each had made threats to kill the other. Rice made more threats than Fuson. August 30, 1928, was a rainy day. Rice was dressed in bib-overalls with the skirt of his jacket inside. He was arranging to go squirrel hunting. Fuson had on a pair of pants and a shirt with the sleeves rolled up to or cut off at the elbows. He was going to see his employer about working the next day and was walking east on the sidewalk on the south side of Cumberland avenue in Middlesboro. Rice was walking west on this same sidewalk. This sidewalk is 20 feet wide, and on it they met near a store referred to as "Schneider's."

Out of this casual meeting came a fist fight. Rice got the better of it, and Fuson turned and ran back down the sidewalk. Rice pursued him, overtook him just as Fuson started into a doorway referred to as "Verran's" The fist fight was renewed, and again the old man ran. Rice soon overtook him near Talbott's store, grabbed Fuson, and according to Fuson said: "G—— d—— you,

I said I will kill you and I will just do it now." He soon knocked Fuson off the pavement into the street, then grabbed him, and in this scuffle Fuson drew his pistol and shot Rice twice.

One ball entered his body below the left nipple and came out below the left shoulder blade. The other ball entered near the center of his abdomen and passed through his stomach and out his back. That ended the struggle. Rice was carried to one hospital, where he died in a little over three hours. Fuson went to another where his wounds were treated and he recovered.

As excuse for his act, Fuson says that he had been having trouble with Rice for two years. Rice, so he says, had shot at him 25 times on 5 different occasions, had come with a shotgun into a field where Fuson was plowing and run him off, had come to his house and proposed to him that they shoot it out, and on another occasion had met him in the road with a gun, had made him get off his wagon, get down on his knees in the mud, and hold his hands above his head, had then cursed him, called him vile names, cocked his gun and poked him in the ribs with it 5 or 6 times, threatening to kill him, but a Mr. Coffee passed along and Rice allowed Fuson to get up and go on. Coffee's evidence sustains Fuson as to the latter part of this praying episode. Fuson says he applied to the circuit judge for protection, but did not get any; he got a magistrate to put Rice under a peace bond and the county judge to put him under a peace bond, but both bonds were released by the circuit court. Fuson says he procured three indictments against Rice for shooting at him, and all of them were "throwed away" but one. None of these indictments were offered in evidence, but no one seemed to question their existence.

Fuson says he did not strike Rice in any of these encounters that resulted in the homicide, but the bruises on Rice's body and the evidence of the witnesses disprove that. He says in the final encounter Rice struck him on the left arm with something which wounded it and made that arm "go dead." He says he was then "beat to death," that he had been hit all over, on the head, shoulders, back, and ribs, kicked all over, and "my wind was give out;" and "I shot him to get him off of me. I believed he was going to kill me." A doctor who examined Fuson said: "He had several bruises on his shins below the knee, also two or three bruises above the knee on the thigh, he had trouble with the fifth rib

on the left side just over the heart, which was either broken or pushed loose from the cartilage, I didn't inflict sufficient pain to determine the exact nature of the injury, it was either a fracture or pushed loose." This blow over the heart the doctor said was a solar plexus blow, would weaken a man, and that it interfered with his breathing. Fuson in this final encounter received severe wounds on his left forearm. The doctor who attended him said this wound had severed some blood vessel; it was bleeding profusely, 'a stream of blood 8 to 12 inches—." Evidently the stenographer did not get all of the doctor's answer. Other witnesses described this blood as spurting out of the arm.

No one knows how Fuson got his wound. For the commonwealth it is contended Fuson shot himself and that one of the balls that passed through the body of Rice had first passed through Fuson's arm. As Rice had hold of Fuson's arm at the time, this might account for both these wounds, and there was no evidence a knife or other instrument was found with which Rice could have made them. However, the wounds on Fuson's forearm were not opposite each other. One doctor testified that if made by a ball it had been deflected and had not gone straight through the arm. A skiagraph of his forearm shows no injury of the bones and no adhering lead. Fuson's sleeves were cut off or rolled up, his arm was bare, yet there was no sign of powder burn. The wound on the inside of the arm was larger than the wound on the outside. One doctor described the wound as a rectangular cut from three-fourths of an inch to an inch on the side, on the internal surface of the arm, such a wound as would be made with a dagger, knife, or a large file. Another doctor described it as a large square-shaped, a torn lacerated wound, it looked like a stab made with a file or some square instrument of that nature. Six doctors testified about this wound. The opinion of two of them was that it was a bullet wound, in the opinion of two others it was not, one said he could not say how it was made, and the other said if it was a bullet wound it was not a normal one.

Immediately after the shooting Fuson said he did not know how he got the wound on his arm and that he supposed he had shot himself. There is so little contradiction in the evidence, and it as a whole tends so forcibly to exculpate Fuson, that we are unable to see on what the jury based its verdict.

Rice made a statement before he died. At that time he was bleeding internally and spitting blood profusely. He was panting for breath and could only say a few words at a time. He was in great pain and was asking for an opiate to relieve his pain. Whether or not he had had an opiate previously does not appear.

This is his statement:

"August 30, 1928.

"Howard Rice says he knows that he has been fatally wounded & will soon die:

"I was coming up the Avenue, I was going up to get in a truck, met Fuson by K. U. office. First thing I knew Fuson came up & knocked my glasses off & struck me. He pulled his pistol and shot me. I had no pistol. He stopped me. I did not stop him; no words passed so far as I remember, it all happened so quick. I tried to keep him from shooting me. He jumped on me when I wasn't looking and knocked my glasses off."

An examination of this statement shows that Rice thought Fuson struck the first blow, yet the evidence of Fuson is that Rice struck the first blow, and it is sustained by the three disinterested witnesses, who saw the starting of the difficulty. From this statement it appears there was only one difficulty, and that it was all over quickly, whereas the other evidence shows there were four separate and well-defined fights. The first in front of "Schneider's," the second in front of "Verran's," the third in front of "Talbott's," and the fatal one out in the street.

Four witnesses testify this fight started in front of Schneider's. The only evidence to the contrary is this dying statement. Fuson's hat was knocked off in front of Schneider's. Rice's hat and glasses were knocked off in front of Verran's. These things were picked up at those places after the fight. According to this statement, no words passed between these men.

Fuson says that in the fight in front of "Verran's" Rice said he was going to kill him, and Mrs. Snead says that just before the shooting Rice said, "Stop now, leave me alone."

This dying declaration was admissible. It was competent evidence, but it is so utterly at variance with all the other evidence that it alone is not enough to sustain

this conviction. About all it amounts to is a statement that Fuson started the difficulty. If that were established that would not be enough to deny to Fuson the right of self-defense, for the proof shows he endeavored to abandon the difficulty and Rice pursued him and renewed it. Neither can this conviction be sustained because Rice said to Fuson, "Stop, leave me alone;" for Rice did not accompany his proposed armistice by a cessation of hostilities on his own part. He then had hold of Fuson, he kept hold of him and had hold of him when both these shots were fired, and this is shown by the very witness who testifies Rice said this. All the evidence shows that as soon as Rice turned him loose, Fuson stopped shooting and ran.

There is much uncertainty about the wounds on Fuson's arm, but eliminating them the question is: Should Fuson be excused for shooting Rice when he did? Self-defense is a God-given right, but to avail himself of it as an excuse for a homicide the slayer must have reasonable grounds to believe that nothing less than the slaying of his adversary will save him from death or great bodily harm. See Morgan v. Com., 228 Ky. 432, 15 S. W. (2d) 273.

The reasonableness of this belief is to be determined by the circumstances as they appeared to the accused at the time of the killing, and not as they appear to the jury at the time of the trial. See Biggs v. Com., 164 Ky. 223, 175 S. W. 379, Ann. Cas. 1916A, 1096. The evidence shows Rice was unarmed, but there is nothing to show Fuson knew that. He knew the treatment he had previously received from Rice, he knew the bodily injuries he had received in this combat, he knew he could not escape further injuries by flight, he had every reason to expect further injuries, and how else he could have freed himself from his infuriated adversary we cannot imagine.

Ordinarily the verdict of a jury must stand unless the court committed some error that caused the jury to reach an erroneous conclusion; but where a conviction is without support in any of the evidence, we have never hesitated to hold it to be flagrantly against the evidence and to award the accused a new trial. This record never discloses one moment after this fight began when Rice was not beating Fuson or pursuing him for that purpose. A man cannot be convicted on suspicion. See Smith v. Com., 224 Ky. 446, 6 S. W. (2d) 464; Slone v. Com., 230

Ky. 199, 18 S. W. (2d) 1005; Miracle v. Com., 228 Ky. 591, 15 S. W. (2d) 429; Watkins v. Com., 227 Ky. 100, 12 S. W. (2d) 329; Forgy v. Com., 219 Ky. 177, 292 S. W. 799; Little v. Com., 210 Ky. 494, 276 S. W. 158; Wireman v. Com., 209 Ky. 551, 273 S. W. 68; Day v. Com., 197 Ky. 730, 247 S. W. 951; Williams v. Com., 182 Ky. 711, 207 S. W. 447; Peay v. Com., 181 Ky. 396, 205 S. W. 404; Hall v. Com., 149 Ky. 42, 147 S. W. 764; Blankenship v. Com., 147 Ky. 768, 145 S. W. 752; Lucas v. Com., 147 Ky. 744, 145 S. W. 751. When this conviction is measured by those, we are compelled to hold Fuson is entitled to a new trial because this conviction is flagrantly against the evidence.

Fuson is complaining of alleged errors in the admission and rejection of evidence, and the court did err in not excluding the statement of L. K. Rice that the dying declaration was a slow, hesitating, careful statement. He complains of evidence of Fannie Breeze, but the jury did not hear her evidence. His complaint of the instructions is without merit.

For reasons indicated, the judgment is reversed.