## Aubrey v. Commonwealth.

April 30, 1946.

Haynes Carter for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK— Reversing.

Shellie Aubrey and Tom Mann were indicted for breaking into the clothing store of W. R. Bethel in Elizabethtown. Upon his separate trial Aubrey was sentenced to two years in prison. On this appeal he is urging there was not sufficient evidence to warrant the submission of the case to the jury. We think his position is well taken.

Mr. Bethel testified that his store was broken into and some $800 worth of clothing taken therefrom. The back door of the store was locked and was prized open with an iron crowbar some five feet in length. Curtis Gibbs, an L. & N. section foreman in Elizabethtown, testified that on the night Mr. Bethel's store was

broken into an L. & N. tool house was broken open and the iron crowbar which was found at the store, a short iron rod about a foot in length, and a cotton work jacket and a pair of gloves were taken therefrom. The chief of police testified about the manner in which the store was broken into and about finding the crowbar there. Flem Myers, a member of the Elizabethtown police force, said he was called to the "Foot Long Hot Dog Stand" on South Dixie Avenue about midnight of the night the store was broken into; that when he arrived there he saw Aubrey leaning against the front of the building and when he asked him what he was doing there he said that he had been watching some Negroes shoot craps in the rear of the hot dog stand; that he saw no Negroes at the rear of the building, but found Mann there; that he saw a small iron rod about a foot long, a cotton jacket and a pair of gloves near a window in the restaurant which appeared to have been tampered with; that he did not see either Aubrey or Mann tampering with the building; and that he saw them at the bus station about two o'clock in the morning and saw them in a taxi about four o'clock. The rod, jacket and gloves were identified as those taken from the L. & N. tool shed. There was other evidence tending to show that an effort had been made to prize open a window and door of the restaurant. Eugene Linde, who was working at a filling station across from the restaurant, said he saw Aubrey and Mann around the building and saw them attempting to break open the window and the rear door. It was at his suggestion that a call was made to the police station. This was all the evidence offered for the Commonwealth.

Aubrey declined to offer any evidence and moved for a peremptory instruction. It is his contention that all the foregoing evidence was incompetent.

This admonition was given to the jury:

"The court again admonished the jury that the evidence concerning the presence or action of the defendant or Tom Mann at the Hot dog stand or anything that occurred or was seen or found there, and the evidence relating to or indicating a breaking of the railroad tool house, or what was there or was missed from there, and testimony and exhibits relating thereto, could not be considered by the jury as substantive evidence; that

the defendant was not being tried for and could not be convicted of any of these things; and that the evidence heard concerning these places and things could be considered by the jury only for the purpose of identifying or tending to identify the defendant as the perpetrator of the breaking and entry of Bethel's storehouse, the offense charged in this indictment, or of participating therein, if in their opinion it did so identify or tend to identify him, and of this the jury were the judges, and that such evidence could not be considered for any other purpose.''

In support of the contention that a peremptory instruction should have been given in Aubrey's favor, his counsel sets forth there was no evidence connecting him with the breaking and entering of Mr. Bethel's store, or that he was even in the vicinity of the store; there was no evidence showing he had any of the stolen articles in his possession; there was no evidence to the effect that he had broken into the L. & N. tool shed, or that he had the articles taken therefrom in his possession; and there was no evidence showing he had any knowledge of the breaking into the store, or had made any statement in relation thereto. He argues also that, even though Aubrey's actions around the restaurant may have been suspicious, this in no sense connects him with the robbery of Mr. Bethel's store. He insists further that the fact he was seen in the bus station at two o'clock and in a taxi at four o'clock reflects in his favor, because if he had been a party to the robbery it is hardly probable that he could have disposed of such a large quantity of merchandise between the times he was seen by the officer.

We think the point is well made that at most the evidence only creates a suspicion of Aubrey's guilt. We have frequently pointed out that such evidence is not sufficient to sustain a conviction. Meyers v. Commonwealth, 194 Ky. 523, 240 S. W. 71; Williams v. Commonwealth, 182 Ky. 711, 207 S. W. 447; Blankenship v. Commonwealth, 147 Ky. 768, 145 S. W. 752.

Judgment reversed, with directions to set it aside and for proceedings consistent with this opinion.