*H. C. Lilly & Son, for appellants.*

---

## Charles Brumback *v.* Commonwealth.

[Abstract Kentucky Law Reporter, Vol. 7—443.]

**Continuance on Account of Absent Witnesses.**

Before a continuance will be granted on the application of one carged with crime, the application must show diligence to get the witness, that there is a probability that he can be had, and that the facts he will testify to are material and not merely cumulative.

**Instructions in Murder Case.**

Whether an instruction as to what constitutes murder is correct or erroneous is immaterial where the accused was acquitted of murder and only held for manslaughter.

**Instruction as to Self-Defense.**

An instruction as to the law of self-defense is not erroneous where the jury are told that they must acquit the accused upon the

ground of self-defense if they believed from the testimony that the accused at the time of such shooting believed and had reasonable grounds to believe that deceased was then about to take his life or inflict on him great bodily harm, and that to him in the exercise of a reasonable judgment the only apparently safe means of repelling such danger, or to him apparent danger, was to shoot the deceased.

## APPEAL FROM CLARK CIRCUIT COURT.

### December 10, 1885.

OPINION BY JUDGE HOLT:

The appellant, Charles Brumback, complains of his conviction for voluntary manslaughter for the killing of Ben. F. Webb on January 26, 1885, upon two grounds; first, that a continuance of the case should have been granted, and second, that the jury were misinstructed.

The killing occurred shortly after dark upon the main street of Winchester. The parties had been in each other's company frequently during the day, had often drank together, and were friendly. The appellant, when he fired the fatal shot, was intoxicated, while the deceased was somewhat affected by liquor. Acting as men will, when under its baneful influence, they had a few words of an angry character; it is probable each or perhaps only the deceased placed one hand upon the shoulder of the other, when the appellant, without the deceased using any violence toward him, drew his pistol and shot him.

There is some conflicting testimony, as is always the case as to such transactions, but, without detailing it, we think the above is a fair, general statement of the occurrence. It was, so far as there was a quarrel, a mutual one, resulting from drunkenness, the prolific source of most of our bloodshedding. The continuance was asked by reason of the absence of two witnesses, one of whom was out of the state and hence beyond the reach of the court's process, and whose absence had already been the ground, or at least, in part, for a continuance granted the appellant at the previous term of the court.

It is questionable if proper diligence was used as to the other witness, as it appears that when the process was sued out for him,

about fifteen days before the beginning of the term, he had in fact removed from the county, and there is no showing that any inquiry was made whether he was then a resident of the county; but conceding that the appellant had the right to so believe, it appears that the witness would only have testified that a few moments before the killing, at another place and not in the presence of the appellant, the deceased had in an angry manner displayed a pistol. This circumstance, even if it were material, was proved upon the trial by a witness for the appellant; but it can not be so regarded. The testimony tends to show that the deceased had no weapon upon his person when he was killed, and that the appellant then had and used the same pistol which the deceased had previously exhibited.

The correctness of the third and fifth instructions given to the jury is denied by the appellant. The latter told them that "By the phrase 'malice aforethought,' as used in these instructions, is meant a predetermination to do an act without lawful excuse or right; and it matters not however suddenly or recently before the act such predetermination is formed." The better course for the trial judge is not to attempt to define malice. The words "without lawful excuse or right" were not incorporated into the instruction defining malice, which was condemned by this court in the case of *Bohannon v. Commonweatlh*, 8 Bush (Ky.) 481, 8 Am. Rep. 474, and it seems to obviate objection to the definition as given in this instance, unless it be a failure to sufficiently express a wicked or evil design; but it is unnecessary to pass upon it, because the appellant was not convicted of murder but of manslaughter only.

The other portion of the instruction objected to is that "If at the time of such shooting (if he did shoot) the defendant believed that Webb was then about to kill him, the defendant, or inflict on him great bodily harm, and there appeared to the defendant, in the exercise of a reasonable judgment, no other apparently safe means of escape or defense from such impending or to the defendant apparently impending danger, except to shoot the deceased, the jury should acquit him on the grounds of self-defense and apparent necessity." It is said, that this required the appellant to run away, rather than defend himself from an assault; that it includes the idea of flight and made it his duty to escape.

The law to be applied to a case must depend upon its circumstances. The right of self-defense, based as it is upon natural law

and necessity, may depend upon the fierceness of an attack, the peril of the assailed, and the urgency of the need of self-defense. If it be a sudden quarrel or affray, a different case is presented from that where one is confronted by a dangerous enemy who has theretofore threatened and assaulted him and has now sought to kill him, and he believes and has reasonable grounds to believe from his presence and the then existing circumstances that his life is in imminent danger. It is true, as suggested by counsel, that in case of a murderous assault the assailed is not required to flee and thereby probably increase the danger. If A assault B so fiercely that his giving back would endanger his life, he may stand and defend himself.

But while this is the rule, yet so sacred is human life in the eye of the law that if one can secure his own safety without taking the life of his adversary, and in the exercise of a reasonable judgment this is apparent, then he must avail himself of the opportunity. We do not think that the instruction is open to the objection urged, but that the words, "no other apparently safe means or escape or defense" simply meant no other safe means of securing himself from danger, and not that the appellant was under any and all circumstances or state of case bound to flee. This is apparent and must have been so to the jury, from the fourth instruction, by which they were told that they must acquit the appellant upon the ground of self-defense if they believed "from the testimony that defendant at the time of such shooting believed and had reasonable grounds to believe that deceased was then about to take his life or inflict on him great bodily harm, and that to him in the exercise of a reasonable judgment the only apparently safe means of repelling such danger, or to him apparent danger, was to shoot the deceased."

The instructions when taken together seem to us to have been as favorable to the appellant as he had a right to expect, if not more so than he had a right to require. He appears in fact to have shot without legal cause, as he was then in no apparent danger. The deceased was not then making a dangerous or murderous assault upon him, and the third instruction can not therefore be regarded as prejudicial to him, even if it be liable to the objection urged, and for the reason and because those given were as favorable to him as he had a right to demand, the court properly refused those asked by him, based upon the idea that "he was not compelled to flee."

Judgment affirmed.
J. N. Cardwell, A. R. Burnam, for appellant.
P. W. Hardin, for appellee.

