## Cloninger v. Commonwealth.

(Decided June 7, 1921.)

### Appeal from Harlan Circuit Court.

1. Criminal Law—Verdict—Appeal and Error—Evidence.—The verdict of the jury, in a criminal action, where the trial has been fair will not be disturbed upon appeal, upon the ground that it is contrary to the evidence, unless it is palpably and flagrantly against the evidence.

2. Criminal Law—Verdict—Evidence.—A verdict of the jury is palpably and flagrantly against the evidence, when it affirmatively appears to be so contrary to the evidence as to induce the belief that it was the result of passion and prejudice.

HALL, JONES & LEE for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

Opinion of the Court by Chief Justice Hurt—
Affirming.

The appellant, Thomas Cloninger, at Baxter, a railroad station near Harlan, shot John Callahan to death. He made use of a pistol, and discharged five shots, and the result was the instant death of his victim. Each of the shots took effect, and one penetrated Callahan from his back. Cloninger having been charged with the crime of wilful murder, by indictment, upon a trial was found to be guilty by the verdict of the jury, and his punishment fixed at imprisonment during life. He was denied a new trial, and a judgment rendered in accordance with the verdict, and from the judgment he has appealed.

While in his motion for a new trial, the appellant assigned various alleged errors of the trial court as grounds for granting him a new trial, upon this appeal, he has abandoned all, but the alleged error in refusing to set aside the verdict of the jury upon the ground that the verdict is against the evidence, and is not supported by a sufficiency of evidence.

Formerly the well established rule was to refuse a new trial upon the ground that the verdict was against the evidence, if there was any evidence which conduced to prove the guilt of the accused of the crime charged, but since the amendment of March 23, 1910, to section 281 of the Criminal Code, which authorizes this court to review the decisions of the trial court upon motions for a new trial, a decision upon the ground that the evidence was insufficient to support the verdict, is reviewable by this court. But, it has, also, consistently been held that a new trial will not be ordered by this court where the trial was fair, unless the verdict is palpably and flagrantly against the weight of the evidence. Wilson v. Com., 140 Ky. 1; Blanton v. Com., 147 Ky. 812; Lucas v. Com., 147 Ky. 744; Crews v. Com., 155 Ky. 122; Edmonds v. Com., 149 Ky. 242; May v. Com., 164 Ky. 112; Chaney v. Com., 149 Ky. 472; Black v. Com., 154 Ky. 144. In the latter case, it was said: "There is seldom a criminal case tried in which there is not sharp conflict in the evidence introduced for the Commonwealth and the accused, and we have adopted the sound rule of not interfering in criminal cases, or indeed in civil cases, with the finding of the jury upon the questions of fact, unless it affirmatively, and we might say, at first blush, appears that their

verdict is so contrary to the evidence as to make it appear that it was the result of passion or prejudice." There are many sound reasons for the above rule, among which are that the jury sees and hears the witnesses and probably is acquainted with their characters, habits and degrees of intelligence, and knows the objects mentioned, and thus is enabled to more correctly estimate the weight to be given circumstances, and the inferences to be drawn from them, and there are other reasons not necessary to be here enumerated.

The appellant, by his brief, does not seem to contest the fact that the evidence was such as from which the jury might have properly found him to be guilty of voluntary manslaughter, but it is seriously insisted that there was no evidence, or at least not a sufficiency of it, to justify the jury in finding him to be guilty of murder. A detailed statement of the testimony of the various witnesses will not be attempted, nor is such necessary to indicate the basis of the opinion arrived at, but it is necessary to state the essential facts to indicate the basis of the theories of the Commonwealth and the appellant, respectively. The victim of the homicide was engaged in assembling a wagon near the depot at Baxter, and had been so engaged since the early morning of the day upon which he was slain at about half after eleven o'clock. Several persons, other than the accused, and the deceased, were about the grounds, but no one seems to have been giving his attention to Callahan, until attracted by the report of the first pistol shot discharged by the appellant. The accused resided with his son, Harmon Cloninger, about one-half mile from the depot. Harmon Cloninger and deceased were enemies, and exercised their dislike by causing each other to be arrested and tried for alleged offenses, three or four times during the previous twelve months. Just two days before the homicide, Callahan had caused Harmon Cloninger to be arrested upon a charge of violating the laws prohibiting the sale of liquor, and at the trial before the magistrate, the accused was present and exhibited some feeling upon the subject. Two or three months previous to the homicide, the accused had remarked that if Callahan should "cross his path" he would kill him. On the evening before his death, Callahan stated to an acquaintance that the Cloningers, father and son, owed him a debt, that he had given them a sufficient time in which to pay it, and that he was

intending to take steps to compel payment, and if he could not secure the payment of the debt by law, he would have recourse to some other means. These statements by Cloninger and his victim, about each other, were, however, not communicated to either. On the day of the homicide, Harmon Cloninger was about the depot for an hour or more while Callahan was engaged in assembling the wagon and had come there, he claimed, to purchase cartridges or cartridge shells, and did purchase them from a merchant in Baxter. He returned to his home, where the accused was, near 11 o'clock, and after having dinner returned to the depot, the accused accompanying him. Before leaving his home for the depot, the accused put his revolver in his pocket, which he did, as he claimed, with the intention of making a sale of it at Baxter. He claimed that his purpose in going to Baxter was to pay a small debt which he owed to a merchant there, and to secure some tobacco, but he did not pay the debt, although he saw the individual to whom he owed it, and who testified that he was unable to remember whether or not the accused was indebted to him nor did he obtain the tobacco desired. Harmon Cloninger claimed that he returned to . the depot for the purpose of seeking the company of certain persons to go with him upon a hunt for rabbits. Within five to fifteen minutes, as estimated by the different persons who deposed to seeing the Cloningers coming to or arriving at the depot, the accused had gone to a place where Callahan was at work assembling the wagon, and several persons were attracted by the report of a revolver, and looking in that direction saw Callahan holding his hand in front of his face, and accused shooting him. After he fell, the accused discharged one more shot into him, but he claims that was done accidentally. The accused then immediately returned to his home claiming on the way, and after his arrival there, that Callahan had broken his arm, by striking him with a monkey wrench, but refused to permit his arm to be examined. There were no weapons of any kind found upon or about the body of Callahan, except a pocket knife which was closed, in one of his pockets. A glove was upon one of his hands, and its mate was lying near his other hand. A monkey wrench was lying upon the hounds of the wagon several feet from where the body lay. A short time after the accused arrived at his home, according to several witnesses, he was under the influence of intoxicating

liquors, but he claims to have gotten in that condition after Callahan was killed. Upon the trial, the appellant testified that after arriving at the depot, from his home, he visited a toilet which was situated near where Callahan was at work, and when he came out of the toilet he engaged Callahan in a friendly conversation, but the latter without provocation, abused him, threw a monkey wrench, or something of similar character, at him and which struck upon the arm and knocked him to the ground, and then advanced upon him continuing to strike at him with his hand, or at least there is no testimony to the effect that Callahan had any object in his hand. When the accused arose from the ground, according to his statement, he commenced to shoot and continued until Callahan fell. Harmon Cloninger corroborates the accused, fully, in the above statement, except as to the conversation, which the accused claimed to have had with his victim before the fighting commenced, and other witnesses, two of whom are brothers-in-law of Harmon Cloninger corroborated the accused in part by testifying that Callahan, after their notice was attracted by the shooting, was striking at accused with one hand, and apparently trying to seize him with the other, while accused was engaged in shooting, and one of the witnesses deposed that the accused was knocked or thrown back upon the ground, so that his hand rested upon it, before he discharged the first shot. This witness, also, testified that Callahan was holding his hand in front of his face. From this evidence it does not appear whether Callahan was assaulting the accused, or whether he was attempting to save himself by seizing the pistol, or knocking it out of the hand of the accused. The arm of the accused was not broken, and had no visible mark at any time which indicated that he had received a blow upon it sufficiently forcible to knock him to the ground, or in fact any kind of blow.

Of course, before one can be guilty of murder, he must be actuated by malice aforethought in doing the acts which result in the death of another. This means, that a predetermination to kill, and that without lawful reason, must exist previous to the act of killing, but it is immaterial at what time previously the predetermination was formed, if it existed at the time of the killing. The existence of malice aforethought may be shown, by proof of threats, or may be inferred from actions of the accused, from the circumstances of the crime, and the man-

ner of its commission. The jury, in arriving at its verdict, necessarily determined, that the accused did not commit the homicide in his necessary or apparently necessary self-defense, and the degree of his crime was, in that instance, dependent upon whether he committed the crime in a sudden affray, or in a heat of passion, superinduced by sufficient provocation, without previous malice, or whether he was actuated by malicious motives. In determining this question, the jury was entitled to take into consideration the facts and circumstances which it believed from the evidence to be established. If it believed from the evidence that the accused, with the purpose of killing or doing serious bodily harm to the deceased, armed himself, sought out the deceased and either with or without bringing on an altercation with him, shot him to death, there could be no question of the existence of malice aforethought upon his part, and it cannot be said that the facts and circumstances proven, and the inferences to be drawn from such facts and circumstances, were not sufficient to support a finding that the accused had predetermined to commit the homicide. The jury is the judge of the credibility of the witnesses, and what the facts of a criminal case are and its verdict will not be disturbed, unless it is so contrary to the evidence as to appear to be the result of passion and prejudice, and a consideration of the facts and circumstances heretofore detailed, indicates clearly that there is no reason to set aside the verdict upon the ground that it is palpably or flagrantly against the evidence. The trial was fair and uncommonly free from error.

The judgment is therefore affirmed.