## Jones and Overton v. Commonwealth.

(Decided June 22, 1923.)

### Appeal from Whitley Circuit Court.

1. **Homicide—Evidence Held to Warrant Submission of Murder to Jury.**—Evidence that defendants and another fired a volley of shots into a house after they had been notified that the shots fired at them had not come from the house, and that there was nobody therein except women and children, with evidence that at the time the shots were fired three women were in plain view of defendants on the porch of that house, one of whom was killed by the volley; held sufficient to warrant the inference of malice, so that it was proper to submit the issue of murder to jury.

2. Homicide—Malice May be Presumed from Circumstances.—Malice in a prosecution for homicide may be presumed from the facts and circumstances in evidence, and is generally shown in that way.

3. Homicide—Instruction on Killing in Heat of Passion Unsupported by Evidence Held Not Prejudicial.—In a prosecution for homicide, the giving of an instruction on voluntary manslaughter by killing in heat of passion, which was unsupported by evidence, was not prejudicial to defendants, who were convicted of manslaughter, where there was ample evidence to show malice by recklessly firing into a house with knowledge of the danger to its inmates, since it is not to be presumed that the jury based their verdict upon the instruction unsupported by evidence.

4. Homicide—Instruction on Aiding and Abetting Need Not Require Finding Crime was Induced Thereby.—An instruction on the guilt of those aiding and abetting the commission of a homicide need not require a finding that the killing was induced by the conduct of the aider and abettor.

5. Homicide—Self-Defense Instruction Requiring Belief of Necessity to Shoot and Wound, or Kill, Held Not Erroneous.—An instruction on self-defense, which authorized an acquittal if the defendants reasonably believed they were in danger, and that it was reasonably necessary for them to shoot and wound, or kill any one or all of the persons, including the person killed, in the house into which they fired, was not erroneous as requiring defendants to have believed it was necessary to shoot, wound, and kill, where their defense was that they thought the shots fired at them were fired from the house, and that they fired into the house to prevent further shooting at them.

6. Criminal Law—Instruction Not Requiring Reasonable Doubt to be Based on Evidence is Not Prejudicial to Accused.—Error in an instruction not requiring reasonable doubt to be based on the evidence is not prejudicial to accused, since it apparently authorizes an acquittal, though a reasonable doubt may be induced in the minds of the jury by something outside the evidence.

7. Homicide—Evidence Held to Warrant Instruction on Manslaughter by Reckless Shooting.—In a prosecution for homicide, where the evidence for the Commonwealth showed that defendants were told, before they fired into the house where deceased was killed, that the shots fired at defendants had not come from that house, which was occupied only by women and children, and further that at the time three women, including deceased, were in plain view upon the porch of the house, an instruction authorizing a conviction for manslaughter if, without malice and without intention to kill deceased, they recklessly shot into the house when they knew, or had reasonable grounds to know, it was dangerous to the lives of the inmates to do so, was proper.

8. Homicide—Manslaughter in Reckless Use of Firearms Described.— Voluntary manslaughter as the result of a wanton, reckless, or grossly careless use of firearms exists only when there is an absence of malice aforethought, or specific intention to kill, or to do

serious injury, and the killing results from a reckless or grossly careless handling of the firearms with knowledge on the part of the accused that the use of weapons in that way was dangerous to life.

H. C. GILLIS, B. B. SNYDER and J. B. SNYDER for appellants.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

The two appellants and Oscar King were jointly charged in an indictment with murder of Rinda Partin. It was further charged that Overton did the shooting and the other two were then and there present and aided, assisted and abetted Overton in the commission of the crime. It was still further charged that the three defendants entered into a conspiracy with each other to murder Rinda Partin, and in pursuance of, and while the conspiracy was in existence, did shoot and murder her.

Jones and Overton were tried together, and the jury found them each guilty of manslaughter and fixed their punishment at twenty-one years' confinement in the penitentiary. A judgment was entered on this verdict, and their motion for a new trial having been overruled, they appeal.

The place of the killing was near the Kentucky and Tennessee line in Whitley county, and each of the defendants was a resident of Claiborne county, Tennessee. They left home on the morning of the killing, each of the three armed, and crossed over into Kentucky for the purpose, as they claim, of visiting some relatives.

They stopped at the house of another King on the Kentucky side, and had dinner with him. While there they each imbibed some intoxicating liquor, and are shown by the evidence to have been more or less intoxicated. They left there in the afternoon and proceeded on their way, but before reaching the residence of Nathan Partin they met Nathan and spoke to him, and nothing unpleasant happened. As they proceeded they passed the residence of Nathan, a two-room log house alongside the road, and claim to have seen nobody there. When they left Nathan he was ready to return to his barn with a sled load of pailings, and he followed along in the same direction. After they passed the house and were at a

point from eighty to one hundred yards beyond it three shots were fired from some point back of them in the general direction of Partin's house, and defendants claim to have heard at least two of those shots pass near to them, and Nathan Partin, who was at the time some little distance away from defendants, claims that two of those shots struck only a few feet above him on the hill, and that he also heard the third shot but did not know where it struck.

Defendants in their more or less intoxicated condition claim to have thought the shots came from the house of Nathan Partin, which they had just passed, and immediately, with little preliminary, they fired a volley of shots, each of them firing into the house of Nathan Partin. The defendants claim they did not at the time see anybody at that house, but fired merely to protect themselves from some person or persons they assumed to be in hiding there, and, as they thought, firing at them. In fact there was nobody at the house except Partin's wife and four small children and his two sisters, Rinda Partin and Mrs. Hurst. The result of the first volley was that Rinda Partin was killed almost instantly and Mrs. Hurst seriously injured.

Nathan Partin's evidence is that at the time the three first shots came from somewhere on the ridge or cliff he was near his barn across the road from his residence and near enough to speak to the defendants. He testifies that just after the three first shots were fired from the ridge or cliff the defendants appeared to be very angry and were swearing, and asked who was shooting at them from Nathan Partin's house; that he then spoke to them and told them nobody was shooting from his house, that there was nobody there but women and children, and he told them this a second time before they fired at the house. The evidence further shows that from the point where the defendants were at the time they fired the first volley one could see anybody on the porch at Nathan Partin's house, and the two surviving women, Mrs. Partin and Mrs. Hurst, each testified that they and the decedent, Rinda Partin, were on the porch in plain view of the defendants when the first volley was fired which resulted in the death of Rinda Partin; that they could at the time plainly see the defendants and the defendants could plainly have seen them. These two women also state that the doors of the house next to the road were

open, it being on the 9th of June, and that all three of the women, Mrs. Partin with an infant in her arms, stepped out on to the porch from the inside of the house after the three defendants had passed the house, and that when the shot or shots came from the ridge the defendants turned and commenced talking among themselves, but the women could not hear what they said, but, realizing they were about to shoot, they had started back into the house from the porch when the first volley was fired.

Nathan Partin and the two women testified that after the first volley all three of the men started back toward the house and at least one or two other volleys were fired by them at and into the house as they approached nearer to it, while defendants say they only fired the first volley, and saw nobody at the house at the time.

The errors complained of are the giving of certain instructions which it is said were not authorized by the evidence, and the wording and language of the instructions that were given.

The court gave a murder instruction and appended to it an instruction on aiding and abetting murder; it also gave a manslaughter instruction by shooting in sudden heat of passion or sudden affray, and appended to that an aiding and abetting instruction for such manslaughter; it also gave an instruction authorizing a conviction of voluntary manslaughter if defendants or either of them without previous malice killed Rinda Partin by recklessly shooting into the home of Nathan Partin with knowledge that it was dangerous to the life or lives of inmates of that house, and also an instruction on the same theory authorizing a conviction of involuntary manslaughter if they so shot without such knowledge. It also gave an instruction on self-defense, which is criticised.

The contention is made that there was no evidence on which to base an instruction for murder, because there was a total absence of evidence of malice. But to this we cannot agree. The evidence for the Commonwealth shows not only that defendants were notified before they fired the first volley, which evidently killed Rinda Partin, that the shots theretofore fired had not come from Nathan Partin's house and that there was nobody in that house except women and children, but it further shows that at the time that volley was fired the three women were in plain view of defendants on the porch of that house. Malice may be presumed from the facts and circum-

stances in evidence, and in fact is generally shown in that way; so that when defendants in their intoxicated condition, and without due investigation, jumped at the conclusion that somebody from that house had been firing at them, and there appeared in sight at that house nobody but women and children, and so having that ocular demonstration they nevertheless fired, it is not an unreasonable conclusion to draw that they had suddenly formed the malice which prompted those shots. Having reached the conclusion therefore that the court properly gave the murder instruction, it is unnecessary to respond to the argument that same was prejudicial to appellants, even though there was only a verdict for manslaughter.

It is likewise contended there was no evidence of any affray between defendants and the dead woman, and that therefore the instruction authorizing a conviction if the shooting was done in sudden heat of passion or in sudden affray was unauthorized. But if it be conceded the evidence did not authorize the giving of such an instruction, it does not follow it was prejudicial to appellants. We cannot assume when there is no evidence of an affray between the women at the house and the defendants that the verdict of guilty was based upon this instruction; on the contrary, it is perfectly apparent from the whole record the verdict was based on the instruction authorizing a conviction of manslaughter if defendants recklessly fired into the house with knowledge of the danger to its inmates. The instruction therefore on sudden affray, even though erroneously given, could not have been prejudicial to appellants.

It is further complained that the instructions on aiding and abetting, both as to murder and manslaughter, are erroneous because they fail to require that the killing was induced by the conduct of the aider and abettor, and the cases of Hall v. Commonwealth, 29 R. 485, and Powers v. Comlth., 110 Ky. 386, are relied upon in support of this view.

The precise question was recently responded to by this court in the case of Fuson v. Commonwealth, June 19, 1923, and need not further be elaborated here.

The self-defense instruction is vigorously assailed because (1) it does not require, as said by counsel, the facts to be determined from the evidence, and (2) because of alleged error in requiring that defendants must

have believed it was necessary "to shoot, wound and kill."

The first contention is not based upon a fact, for the whole self-defense instruction is predicated upon what the jury may believe "from the evidence in this case." The instruction then proceeds to authorize the acquittal of the defendant who fired the shot if at the time he believed, and had reasonable grounds to believe that he or either of his companions was then and there in imminent danger of the loss of life or the infliction on some one of them of great bodily harm "at the hands of anyone in, at or near the Nathan Partin house or around the same," and if he believed it was necessary "to so shoot and wound or kill any one or all persons, including Rinda Partin, in, at or near said house in order to avert that danger, real or to the defendant who shot her reasonably apparent," and the instruction then proceeds to give to the aiders and abettors the benefit of the same defense in practically the same language.

It is said that by this instruction the acquittal of the defendants is made to depend upon the fact, or their belief, that it was necessary to shoot, wound and kill someone, and that the instruction does not follow the usual form of such instructions in merely telling the jury if the defendant who shot and killed Rinda Partin fired because it was necessary or was believed by him in the exercise of a reasonable judgment to be necessary to shoot in order to avert danger to himself or to his companions, he should be found not guilty. But, as applied to the facts of this case, what is the practical difference? It is admitted that defendants fired at the house, and that in so firing some one of them killed the decedent. The instruction authorizes an acquittal if it was so necessary to fire into the house, or believed by such defendant to be necessary, in order to avert the danger, real or apparent, even if in so doing he did shoot and kill Rinda Partin. A fair interpretation of the instruction is that if it was necessary for defendants in fact, or if they in the exercise of a reasonable judgment believed it to be necessary, to shoot at or into the house in order to avert some impending danger, real or apparent, to them, then they had the right to shoot into the house even if they did thereby kill the decedent.

As applied to the facts of this case a self-defense instruction is in no essential respect different from the or-

dinary self-defense instruction. The essential thing that was submitted is whether they had the right under the facts and circumstances in evidence to fire into the house to avert some real or apparent danger to themselves without regard to whether they thereby took human life.

The instruction in this case was probably worded so as to conform to the ruling of this court in the case of Reynolds v. Comth., 183 Ky. 375, wherein it was held that a self-defense instruction which in effect told the jury the appellant in that case in the exercise of the right of self-defense was authorized to shoot and wound decedent but not to kill him, was incomplete and erroneous.

It is true as contended by counsel that the reasonable doubt instruction does not require that the doubt shall depend upon the evidence; and it is earnestly contended that this is error. Granting for the purposes of this case this to be error, we are at a loss to understand how it could have been prejudicial to defendants. The instruction appears to authorize the application of the reasonable doubt theory even though that reasonable doubt may be induced in the minds of the jury by something outside of the evidence, and surely this was giving to the defendants a privilege to which they were not entitled.

The instruction authorizing a conviction of defendants if they shot into the Partin house without previous malice and without intention to kill Rinda Partin, by the reckless or grossly careless handling of firearms, when they knew, or had reasonable grounds to know, that it was dangerous to the life or lives of the inmates of that house to shoot as they did, was eminently proper, and it is perfectly obvious that this is the instruction under which they were found guilty of voluntary manslaughter.

The rule in such cases is accurately stated in the case of Davis v. Commonwealth, 193 Ky. 597, as follows:

"Voluntary manslaughter as the result of a wanton, reckless or grossly careless use of a firearm, exists only when there is an absence of malice aforethought and an absence of a specific intention to kill, or to do serious injury, and the killing results from the reckless or grossly careless handling of the firearm, with the knowledge on the part of the accused that the use of the weapon in that was was dangerous to life. Ewing v. Comth., 129 Ky. 237; Speaks v. Comth., 149 Ky. 393; McGeorge v. Comth., 145 Ky. 540; Hunn v. Comth., 143 Ky. 143; Sparks v. Comth., 3 Bush 111; Chrystal v. Comth., 9 Bush 669;

Smith v. Comth., 93 Ky. 318; York v. Comth., 82 Ky. 360; Montgomery v. Comth., 26 K. L. R. 356; Brown v. Comth., 13 K. L. R. 372. The principle is based upon the theory that a man intends the natural consequences of his acts and what he is aware of or ought to be aware will result from the handling of a weapon in a way dangerous to life, although he actually has no intention to kill.''

In another form the rule is stated in the case of York v. Commonwealth, 82 Ky. 360, where the court says:

''It may now be regarded as well settled in this State by numerous decisions of this court that when one does an act in such a reckless, careless manner that it is calculated to endanger human life, and death ensues, he is guilty of manslaughter, although the death of the person killed may not have been intended.''

This is probably a more flagrant case justifying the application of that rule than any we have had in this state. The defendants, without any apparent reason therefor, and with no convincing evidence, claim to have thought they were being fired upon from the Partin house. The evidence, however, justifies the belief that they were not only notified before firing that the shots they had heard did not come from that house, but it authorizes the further belief that the women and children were actually in plain view of defendants when the shots were fired, and we are of opinion that the facts furnish convincing evidence of the wanton and reckless firing into a dwelling house upon a mere suspicion, and after defendants had been notified nobody was in that house except women and children.

A careful reading of the record fails to convince us of any prejudicial error. Judgment affirmed.