## Morgan v. Commonwealth.

(Decided March 15, 1929.)

W. H. LEWIS and ROY R. RAY for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT, Assistant Attorney General, for appellee.

Opinion of the Court by Drury, Commissioner—Affirming.

On Wednesday, March 28, 1928, John Hacker was slain. Demus Morgan and his brother, George Morgan, were charged by indictment with his murder. They sought separate trials, and the commonwealth elected to try Demus. He was found guilty, his punishment fixed at life imprisonment, and he has appealed. George Morgan and Hacker were neighbors. Demus Morgan lived in Perry county, but was by no means a stranger in the community, and apparently all had been friends. The manufacture, transportation, sale, possession, distribution and consumption of intoxicating liquor looms large in this record. Slayers and slain alike were under its influence, when the homicide occurred.

The evidence of the Morgans is that the eyewitnesses were in the same condition. As a result, there is much confusion in the evidence. This killing occurred at the home of Burley Roberts. The Morgans came to Roberts' home about 2 o'clock in the afternoon. They had an ample supply of whisky; whether they bought it from Roberts, as they contend, or brought it with them, as Roberts testifies, is sharply disputed. Soon John Hacker and Jimmy Roberts appeared, and the liquor was passed around. There is sharp dispute in the evidence about who partook of it, and who refused. About all we know of what occurred for the next hour or two is that the witnesses testified, "We just sat around and talked." About 4 o'clock the two Morgans retired for a short conference. They knew Hacker was armed with a .45 automatic, and Hacker knew that Demus Morgan had a .38 special. After this conference, George Morgan proposed to Hacker that he should remove the clip from his automatic and give it to Dellie Smith, and stated that he (George) would get the .38 special from Demus. That was done. George Morgan, having followed her out of the house, then pointed the .38 special at her, and compelled her to surrender to him the automatic, and thus he came into the possession of both pistols. At this point Demus Morgan came out of the house and had a short conference with George, and then returned to the house. Next George Morgan drew his knife and pushed Jimmy Roberts up against the house, and made a demonstration as if to cut his throat. The women screamed, and the men ran out of the house. Hacker jerked George Morgan away from

Roberts, George Morgan threw his arms about Hacker, and pinioned Hacker's arms down to his side, and, while George was thus holding Hacker, Demus shot and killed Hacker with the .38 special which he had got from George either in this struggle or previously. The Morgans sharply dispute this, but the jury evidently accepted the account of the difficulty given by the witnesses for the commonwealth. The Morgans say George had no knife on that occasion, and that Hacker got his automatic in this struggle, struck Demus in the face with it, and fired one shot from it at Demus before Demus shot him. The credibility of this account is seriously weakened by the fresh knife wound found on the body and in the clothing of Hacker when he was dressed for burial. The clip from the automatic was found in one of the pockets of the dead man.

To reverse this judgment, Demus Morgan relies on the following grounds: First, that the court erred in instructing the jury. The court gave the ordinary self-defense instruction, and Demus contends that instruction should have gone further, and should have said to the jury that he not only had the right to defend himself against John Hacker, but also against Jimmy Roberts, and had the right to defend his brother, George Morgan, against either or both of these. The right of self-defense is not derived from any statutory enactment, but is a God-given right which man had when he was yet a savage and which he did not surrender when he came into civil society. See Gray v. Combs, 7 J. J. Marsh. (30 Ky.) 478, 23 Am. Dec. 431, and Brumback v. Com., 13 Ky. Op. 818. The right of self-defense arises from necessity, and of that necessity the accused alone is the judge. See Lewis v. Com., 224 Ky. 502, 6 S. W. (2d) 502; Hawley v. Com., 191 Ky. 380, 230 S. W. 296; Duke v. Com., 191 Ky. 138, 229 S. W. 122. However, to avail himself of this right, the accused must have reasonable grounds to believe, and, in the exercise of a reasonable judgment, must believe, that nothing less than the slaying of his adversary will save him from death or great bodily harm. The instruction given gave Demus Morgan this right, so far as John Hacker was concerned, and, by his own evidence, Demus shows that he was not entitled to an instruction defining his right to defend himself against Jimmy Roberts or to defend his brother, George, against either of these, for in his own evidence he says that Jimmy Roberts was not there, and states that the reason he shot John Hacker

was "because he was going to kill me." Thus out of his own mouth it is established that he was in no danger, so far as Jimmy Roberts was concerned, and that this shooting was prompted, not by any danger he thought George Morgan was in, but by what he says he believed was a danger to himself. The instruction given embodied all the law of the case on this subject. Demus Morgan's position here is much like the position of Kindrick in the case of Kindrick v. Com.; where Kindrick insisted he had a right to defend his brother and to have the jury so instructed. This court affirmed the Kindrick case because "appellant, in giving his testimony, did not pretend to justify his shooting of the deceased, except in defense of himself." See Kindrick v. Com., 226 Ky. 144, 10 S. W. (2d) 639.

His next complaint is that one of the men who sat on the jury had formed and expressed an opinion before being selected. Demus Morgan sought to manifest this by affidavits, but these affidavits were never made a part of the record by any order of the court or by the bill of exceptions; hence cannot be considered by this court on appeal.

His third complaint is that the court admitted incompetent and prejudicial evidence against him, and all of his argument on this ground is addressed to this one remark which several witnesses testify Demus Morgan made to George Morgan's wife, a few minutes after the homicide: "I told George that I would kill him when that whisky was named." Demus Morgan says this evidence should not have been admitted; that it was prejudicial to him; and that, if it amounted to anything, it amounted to a threat to kill George Morgan. From the reading of the remark itself, it does not clearly appear to whom the pronoun "him" refers. It might refer to Hacker, or it might refer to George Morgan, but, when we consider that it was made to George Morgan's wife, it is clear that it refers to Hacker. Further in the evidence it is shown that, after the killing, and after he had been away for some little time, Demus Morgan came back to the Burley Roberts' home, and asked if George was there, and, according to the witness, Lee Hoskins, who was entirely disinterested, Demus Morgan then said: "If George Morgan was killed in there he was going to kill the rest in there." This remark removed the last vestige of doubt about whom Demus Morgan was talking when he made the remark of which he is now complaining. The pro-

noun "him" in that remark referred to Hacker, and these things show it. There was no bad feeling between Demus and George Morgan; they came to this Roberts' home together; they stayed there together; they were drinking there together; they were together at the slaying; and they left there together. If authority be needed to support this, that authority is found in the case of McCandless v. Com., 170 Ky. 301, 185 S. W. 1100, where he said: "If all the circumstances show to whom the threats refer, they are not irrelevant and inadmissible, although they are indirectly made and by innuendo."

His final effort to procure a reversal is based on what he says was an entire absence of evidence to show malice or motive. The commonwealth does not have to show motive, though, in cases where the commonwealth is resting its case entirely upon circumstantial evidence, it frequently becomes quite important that motive be shown. The commonwealth does have to show malice, but malice may be shown by proof of threats or may be inferred from the defendant's action at the time of the killing, and from the circumstances of the crime, or the manner of its commission. See Turner v. Com., 167 Ky. 365, 180 S. W. 768, L. R. A. 1918A, 329; Cloninger v. Com., 191 Ky. 841, 231 S. W. 535; Jones v. Com., 200 Ky. 65, 252 S. W. 130. The manner in which this slaying was accomplished, the conference between these two brothers, the ruse by which Hacker was dispossessed of his pistol, the second conference between the brothers after George had Hacker's pistol, the way the difficulty was started, the way the slaying was done, and Demus' act in preventing any one's going to the aid of Hacker after he was shot, together with his subsequent remark to George Morgan's wife, all are clearly indicative of malice, and abundantly support the finding of the jury.

The judgment is affirmed.