## Hurd et ux. v. Commonwealth.

(Decided Jan. 15, 1935.)

316

FORESTER & SHEHAN for appellants.

BAILEY P. WOOTTON, Attorney General, DAVID C. WALLS, Assistant Attorney General, and DANIEL BOONE SMITH for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

Upon the joint trial, the appellants, Luther Hurd and his wife, Daisy, were found guilty of killing Pedro Marpinez. The former was sentenced to serve twenty-one and the latter five years in prison.

During the day before, Marpinez and Homer Nantz, a brother of Daisy Hurd, were at the Hurd home, where all the parties engaged in drinking liquor furnished in part by Marpinez. They left about 10 o'clock that night, but some time toward the morning the two men returned, and, according to Hurd and his wife, they assaulted him without provocation. A fight ensued in which Hurd suffered an injury about the head. The woman declares that after she had unsuccessfully tried to stop the fight by her entreaties, she grabbed a chair and knocked the assailants loose from her husband. Although Marpinez snapped his pistol in her face at the

yard gate, she was not intimidated or restrained and, as she says, she "put the rocks to this Mexican and my brother down the road." It was soon discovered that her pocketbook was gone. Thereupon Hurd got a shotgun, and he and his wife went in pursuit of the two men to recover the pocketbook, as they declared. They came upon them a short distance away and, according to witnesses for the commonwealth, Hurd opened fire. According to the Hurds they were first shot at by Marpinez. In a little while Hurd and his wife went to a neighbor's and got him to get Ben Gilbert, who was a deputy sheriff and neighbor, to take Hurd to Harlan to the hospital in his (Hurd's) automobile. Gilbert and the woman rode in the car, and Hurd and Floyd Creech and the shotgun were in the rumble seat. She was drunk and Hurd was drinking. There is contradiction whether the officer suggested taking the gun for protection in case they should be fired upon en route, or whether it was empty, as he thought, and it was simply carried along. About a half mile away the car was stopped at the home of Slaney Fields. Whether this was done by Gilbert, the driver, or by the woman is in dispute. At any rate, she saw Marpinez and Nantz in the road and called attention to them. According to the evidence of the commonwealth, the woman immediately got out of the car and began cursing and calling upon her husband to kill them. A violent fight followed at the home of Lawrence Fields between Hurd on one side, and the two men and Joe Nantz, the father of Homer and Daisy, on the other. The commonwealth showed that this was precipitated by Hurd and that he continued the aggressor throughout. Marpinez surrendered his pistol to Gilbert. As he ran out of the house toward a tree, Hurd shot him in the back with a shotgun and he immediately died. According to Hurd the deceased was in the act of drawing a pistol on him when he shot in self-defence. At the time Daisy Hurd was within twenty-five or thirty steps of her husband, and the commonwealth proved that during all of this time she was shouting to her husband to kill all of them and applying epithets not only to Marpinez but to her father and brother. After the deceased fell from the shot, it seems the other two men were trying to conceal themselves and the woman kept on cursing and calling to her husband to kill them. All of this is denied by Mrs. Hurd, who testified that her statements were merely warnings to her husband to look out for the others.

The evidence fully sustains the verdict as to both defendants. While there was no immediate overt act on the part of the woman other than the encouraging, abetting, and counseling of her husband, that together with her preceding conduct clearly constituted her a party to the crime. Roberson's Criminal Law, sec. 184, etc.; Combs v. Commonwealth, 224 Ky. 653, 6 S. W. 1080, 1082; Bryant v. Commonwealth, 231 Ky. 152, 21 S. W. (2d) 231; Philpot v. Commonwealth, 240 Ky. 289, 42 S. W. (2d) 317.

We find no merit in the contention of the appellants that it was error to admit declarations of Daisy Hurd after Marpinez had been shot because they were not res gestæ in the matter of his killing, since they did not relate to or explain the principal fact. These things were not separable. They were part of the entire transaction and showed the woman's intent and state of mind. They were verbal acts of a participant which were practically contemporaneous with the principal act. The picture would be incomplete without them. As such they were clearly admissible. Karsner v. Commonwealth, 235 Ky. 710, 32 S. W. (2d) 43; Manns v. Commonwealth, 235 Ky. 325, 31 S. W. (2d) 390; Jordan v. Commonwealth, 240 Ky. 391, 42 S. W. (2d) 509; Jarvis v. Commonwealth, 245 Ky. 790, 54 S. W. (2d) 307; Jones v. Commonwealth, 250 Ky. 217, 62 S. W. (2d) 56. There are one or two other items of evidence objected to, but we think they were properly admitted.

The defense instruction provided that if the jury should believe from the evidence that Hurd believed, and had reasonable grounds to believe, that either he or his wife was, or both were, at the time in danger of death or of great bodily harm by the deceased, or by Homer Nantz or Joe Nantz, or any of them, or that either of the defendants believed, and in the exercise of reasonable judgment did believe, that it was necessary to kill the deceased in order to protect himself or themselves, then the jury should acquit both upon the ground of self-defense or apparent necessity. Appropriate instructions as to manslaughter and the degrees of homicide were given. The instructions are criticized as not providing for the right of self-defense as to each of the parties, especially as to Daisy Hurd. There was no evidence whatsoever tending to show any attack being made upon Daisy Hurd. She made no claim to

self-defense. As an aider and abettor of her husband she stood in his place and had the right to encourage him to defend himself. The right of an aider and abettor rests upon the right of the principal in a crime. The wife went into the affray at her own peril and became fully responsible for all her husband did. She was not in any danger. We think the instructions were as liberal as either of the parties was entitled to. If she had been in danger, then the instructions might well have followed the form given in Steeley v. Commonwealth, 129 Ky. 524, 112 S. W. 655, 33 Ky. Law Rep. 1032; but that is not this case.

The instructions are further criticized in that they did not provide that the principal's act must have been induced by the abetting and encouraging or procurement of the aider and abettor before the jury could find Daisy Hurd guilty. It is true that in Powers v. Commonwealth, 110 Ky. 836, 61 S. W. 735, 63 S. W. 976, 22 Ky. Law Rep. 1807, 23 Ky. Law Rep. 146, 53 L. R. A. 245, and Hall v. Commonwealth, 93 S. W. 904, 905, 29 Ky. Law Rep. 485, the court indicated that upon another trial of one charged with aiding and abetting in the commission of a homicide the instructions should include the phrase, "and said killing was induced thereby." However, in Fuson v. Commonwealth, 199 Ky. 807, 251 S. W. 995, 997, the subject was considered carefully, and upon reason and authority it was held that such qualification was not necessary where the accused was actually present and actively participating in the crime. As said in the opinion:

"The reasoning is clear. If one commits a crime and another is actually present aiding, abetting, assisting, or encouraging its commission, the latter thereby becomes a participant, a principal in the second degree, and his culpability is determined by his motives, and not by the degree of his influence over the former."

This conclusion was followed in Jones v. Commonwealth, 200 Ky. 65, 252 S. W. 130.

It is further claimed that it was error not to define in the instructions the phrase, "aid, assist, advise, counsel, and encourage." We are at a loss to know what simpler or plainer terms could have been used in a definition. It has never been customary to define

those terms, and we can see no reason why an effort should be made to do so. They carry their own meaning to any intelligent mind.

Perceiving no error prejudicial to the rights of the accused, the judgment is affirmed.