## MUNCY v. COMMONWEALTH.

Court of Appeals of Kentucky.
Feb. 13, 1953.

S. M. Ward and William Melton, Hazard, for appellant.

J. D. Buckman, Jr., Atty. Gen., and H. D. Reed, Jr., Asst. Atty. Gen., for appellee.

SIMS, Chief Justice.

Lute Muncy and Gillie Woods were jointly indicted for the willful murder of Demaree Asher. A second count in the indictment also charged Muncy with aiding and abetting Woods in the crime. On separate trials, Woods was convicted of murder and sentenced to prison for life and Muncy was convicted of voluntary manslaughter and sentenced to prison for two years.

On this appeal Muncy asks that the judgment against him be reversed because: 1. The verdict is not supported by the evidence and the court should have directed a verdict in his favor; 2. the instructions are erroneous.

The killing occurred about 7 o'clock on the night of December 18, 1950, on a country road in Leslie County. Woods spent Sunday and Sunday night as a guest in Muncy's home in Clay County. On Monday morning when Muncy took his children to school at Hyden, Woods accompanied him. After dropping the children off at school, the two men went to Gillie Bowling's place and engaged in a poker game. Later in the afternoon they returned to Leslie County and went to Jim Wooten's roadhouse where they met up with Demaree Asher, Mae Baker and Stevie Sizemore. Some drinks were taken and Woods and Muncy got drunk. While at Wooten's place Asher called Woods out and told him he was in bad company when associating with Muncy.

Soon thereafter all parties left Wooten's roadhouse; Woods and Muncy in the latter's car which Muncy was driving, and Asher, the Baker girl and Sizemore were in a truck. Before they had driven a great distance, Woods told Muncy what Asher had said to him about being in bad company. Thereupon, Muncy turned his car around saying, "Them God damn Ashers have been meddling in my business too long," so Woods testified. Muncy came up behind the truck which was parked in front of the house of Laura Sizemore, from whom Asher wanted to buy an icebox. Muncy parked his car on the opposite side of the road from the truck and according to the Commonwealth's proof called Asher over to his car saying, "What in the God damn hell are you talking about me for?" Asher denied talking about Muncy, whereupon Woods got out of the car, slapped Asher a time or two and then shot him.

The Commonwealth's proof shows that while Woods was slapping and shooting Asher, Muncy was sitting in his car with the door open and holding a pistol across his lap. Furthermore, the Commonwealth proved by Mollie Osborne that the day before the killing she heard Muncy say, "he was going to kill Demaree Asher or have it done." Pearl Woods testified that the day before the killing he loaned Muncy a blue-steel .38 caliber pistol. Gillie Woods testified this was the pistol with which he killed Asher. There was proof that immediately after the shooting Muncy said to Woods, "Come on, get in the car, you did what I wanted you to do." Woods got in Muncy's car and the latter drove him away from the scene of the crime.

Muncy denied telling Mollie Osborne he was going to kill Asher or have him killed; that he had a pistol across his lap while Woods slapped and shot Asher, and testified his pistol was locked in the glove compartment of his car. He denied telling Woods after the killing that Woods did what he wanted him to do; or that he furnished Woods with the pistol with which Asher was killed. Muncy's version of the shooting was Asher flagged his car and he thought the truck in which Asher was driving was out of gas or had a puncture. When he stopped the car Asher came over to his side of the road and started an argument with Woods about "busting up a juke box" and as Asher advanced on Woods, the latter shot him.

Appellants' counsel argue in their brief the evidence does not show appellant aided or abetted Woods in the shooting and his mere presence at the scene of the crime when his companion did the shooting is not sufficient of itself to sustain his conviction as an aider and abettor, citing Hall v. Com., 219 Ky. 446, 293 S.W. 961; Whitt v. Com., 221 Ky. 490, 298 S.W. 1101; Combs v. Com., 224 Ky. 653, 6 S.W.2d 1082. This is the correct rule in this character of case, but the evidence in the record before us instead of showing that Muncy was only passively present at the scene of the crime, clearly shows he aided and abetted Woods in killing Asher.

There is no merit in the contention that as the murder instruction did not require the jury to believe beyond a reasonable doubt Muncy was guilty of murder, the instructions are erroneous. The manslaughter instruction under which Muncy was convicted required the jury to believe beyond a reasonable doubt that he was guilty. There was a separate instruction telling the jury if they had a reasonable doubt as to whether Muncy was guilty of murder or of voluntary manslaughter, they

should find him guilty of the lesser offense. Also, there was a separate instruction that if upon the whole case the jury had a reasonable doubt of Muncy having been proven guilty, they would acquit him. Manifestly, the instructions properly gave the accused the benefit of the doubt on the whole case and were correct. Berry v. Com., 149 Ky. 398, 149 S.W. 824; Dublin v. Com., 260 Ky. 412, 86 S.W.2d 136.

■ Another criticism of the instructions is they did not require the jury to believe the "aiding and abetting must have induced the crime." In Hall v. Com., 29 Ky.Law Rep. 485, 93 S.W. 904, it was written the instructions should state the aiding and abetting induced the killing. However, in later cases we have abrogated the rule and said that the culpability of the aider and abettor is determined by his motive rather than the degree of influence exercised over his principal. Fuson v. Com., 199 Ky. 804, 251 S.W. 995. On page 997 of 251 S.W. of the Fuson opinion appears a discussion of the question and we will not repeat it here. It will suffice to say that the Fuson opinion was approved in Jones v. Com., 200 Ky. 65, 252 S.W. 130, and in Hurd v. Com., 257 Ky. 315, 78 S.W. 2d 9, and we think they are more logical than the Hall opinion.

■ The last criticism of the instructions is that on Muncy's trial, Gillie Woods testified he shot Asher "for nothing," therefore there was no evidence upon which to base a voluntary manslaughter instruction in the trial of Muncy, the aider and abettor. It is argued Muncy is guilty of murder or nothing and it was reversible error to give the manslaughter instruction, citing Johnston v. Com., 170 Ky. 766, 186 S.W. 655. But sight must not be lost of the fact that on Muncy's trial Woods admitted that in testifying on his own trial he said he shot Asher in self-defense. Also, Muncy in testifying in his own behalf in the record before us stated Woods and Asher had an argument over Woods "busting up a juke box" and Asher was shot when he advanced on Woods. The rights of an aider and abettor are based upon those of the principal in the crime. Under the evidence presented in this record the court

properly gave the manslaughter instruction. Hurd v. Com., 257 Ky. 315, 78 S.W.2d 9; Young v. Com., 276 Ky. 26, 122 S.W.2d 1034.

Perceiving no error prejudicial to appellant's substantial rights, the judgment is affirmed.